850 So.2d 1059 (2003)
Daisy ROBERSON, et al., Plaintiffs-Appellees,
v.
ARCADIA HEALTHCARE CENTER, INC., Defendant-Appellant.
No. 37,761-CA.
Court of Appeal of Louisiana, Second Circuit.
July 9, 2003.
*1060 Walter F. Clawson, Shreveport, for Intervenors Appellants, La. Patients Compensation Fund Oversight Board and La. Patients Compensation Fund.
Cook, Yancey, King & Galloway, by Bernard S. Johnson, Shreveport, for Plaintiffs Appellees, Daisy Roberson, Lily Davis, Thelma Bobb, Bobby R. Roberson, Minnie Calahan and Irma Davis.
Georgia P. Kosmitis, Shreveport, Bolen, Parker & Brenner, by James A. Bolen, Jr., Gregory Engelsman, Alexandria, for Defendants Appellees Arcadia Healthcare Center, Inc. and Troy Unbehagan.
Before WILLIAMS, STEWART and GASKINS, JJ.
STEWART, J.
The Louisiana Patient's Compensation Fund and the Louisiana Patient's Compensation *1061 Fund Oversight Board (referred to collectively herein as the "PCF") appeal from a judgment overruling their objections to a settlement proposed in accordance with La. R.S. 40:1299.44(C). The PCF objected to the proposed settlement because neither an insurer nor a self-insured healthcare provider were parties to the settlement as required by the statute. The PCF also objected on the basis that the plaintiffs failed to produce facts sufficient to establish the healthcare provider's status as a qualified healthcare provider. The plaintiffs have filed a motion to dismiss this appeal.
For the reasons to be set forth and in light of the recent Louisiana Supreme Court decision in Ginn v. Woman's Hospital Foundation, Inc., XXXX-XXXX (La.4/9/03), 842 So.2d 338, we reverse the trial court's judgment and remand for further proceedings.

FACTS
This action for damages stems from the death of Clayton Roberson, a former resident of Arcadia Healthcare Center (Arcadia), a nursing home in Bienville Parish. While a resident at Arcadia, Mr. Roberson sustained a head injury in a slip and fall incident on September 26, 1999. He subsequently died on December 22, 1999. Daisy Roberson, Lily Davis, Thelma Bobb, Bobby Ray Roberson, Minnie Calahan, and Irma Davis, the widow and children of Mr. Roberson, filed suit against Arcadia and later added Arcadia's administrator, Troy Umbehagen, as a defendant. The principal complaint of the suit is the failure of Arcadia to provide proper care and treatment for Mr. Roberson. During the course of litigation, Arcadia's insurer was placed in liquidation. The insurer is no longer a participant in this matter.
On October 29, 2002, the plaintiffs filed a "Notice of Settlement and Petition for Recovery Against the Louisiana Patient's Compensation Fund." This filing stated that the plaintiffs reached a settlement with Arcadia and Umbehagen whereby Arcadia agreed to pay the sum of $100,000 in settlement of the plaintiffs' claims. Furthermore, the plaintiffs reserved the right to proceed against the PCF for damages over $100,000 with the payment of $100,000 by Arcadia to be considered an admission of liability in accordance with La. R.S. 40:1299.44(C)(5).
In response to the petition for judicial approval of the settlement, the PCF intervened and filed objections to the proposed settlement. The PCF asserted that intervention was necessary to protect its interest inasmuch as judicial approval of the settlement would result in an admission of liability. The PCF objected to the proposed settlement on two grounds. First, the PCF alleged that the plaintiffs had failed to set forth sufficient facts to support the conclusion that either Arcadia or Umbehagen were qualified health care providers under the Medical Malpractice Act (MMA), La. R.S. 40:1299.41, et seq. Second, the PCF alleged that the settlement provisions of La. R.S. 40:1299.44(C) do not apply when it is the health care provider, rather than the insurer or a self-insured health care provider, who agrees to settle and pays the settlement amount.
In response to the PCF's intervention and objections, the plaintiffs filed a motion for a partial summary judgment seeking dismissal of the PCF's objections. Plaintiffs supported their motion with a statement purporting to set forth the uncontested material facts. This statement included the facts that the plaintiffs had filed a complaint with PCF concerning Arcadia's negligence; that the PCF acknowledged in writing on May 15, 2000, that Arcadia was a qualified health care provider and was insured for occurrences *1062 for the period of March 5, 1999 to March 5, 2000; and that the PCF issued a certificate of enrollment on June 13, 2000, certifying Arcadia's qualification and payment of applicable surcharges. Arcadia also responded to the PCF's objections. Arcadia maintained that it was and continues to be a qualified health care provider entitled to the protections of the MMA. The PCF opposed the plaintiffs' motion for partial summary judgment.
On January 9, 2003, the trial court conducted a hearing on the PCF's objections to the proposed settlement and the plaintiffs' motion for partial summary judgment. The judge verbally granted the motion for partial summary judgment. The judge construed the ruling as one approving the settlement and overruling the objections of the PCF. It appears from the record that the PCF filed a notice of intent to seek supervisory review of the ruling but that it did not follow through. Instead, the PCF filed an opposition to the form of the proposed judgment and also filed an exception of no cause of action on the grounds that the pleadings did not clearly allege medical malpractice.
On March 3, 2003, the trial court conducted a hearing on the PCF's opposition to the proposed judgment and exception of no cause of action. The judge denied the exception of no cause of action upon determining that the plaintiffs' claims alleged medical malpractice and that Arcadia was shown to be a qualified health care provider. The trial judge again rejected the PCF's argument that settlement and payment by Arcadia removed this matter from the provisions of La. R.S. 40:1299.44(C). A judgment approving the settlement and granting the motion for partial summary judgment thereby overruling the PCF's objections to the settlement was signed that same day. The judgment assessed costs against the PCF and set the matter for jury trial on an expedited basis due to the age of Daisy Roberson.
Thereafter, the PCF filed a motion to amend the judgment to reflect its finality insofar as it granted the plaintiffs' motion for partial summary judgment. On March 24, 2003, the trial court granted the PCF's motion and certified the judgment of March 3, 2003 as a final judgment suitable for immediate appeal in accordance with La. C.C.P. art. 1915(B). The PCF then filed the instant appeal.
The plaintiffs responded with a motion to dismiss the appeal. Also, the plaintiffs and the PCF filed a joint motion to expedite disposition due to the jury trial being scheduled for July 21, 2003. By an order issued June 12, 2003, this court granted the motion to expedite the appeal and referred the motion to dismiss to the merits. Having set forth the pertinent factual and procedural history, we now turn to the issues presented for disposition, namely the motion to dismiss the appeal, the qualified health care provider status of Arcadia, and the validity of the settlement under La. R.S. 40:1299.44(C).

DISCUSSION
Motion to Dismiss Appeal
The plaintiffs assert that this appeal should be dismissed pursuant to the clear mandate of La. R.S. 40:1299.44(C)(6) which provides, "Any settlement approved by the court shall not be appealed." The PCF counters that La. R.S. 40:1299.44(C)(6) does not prohibit appeal of the trial court's judgment granting the partial motion for summary judgment, and the PCF cites Bennett v. Krupkin, XXXX-XXXX (La.10/16/01), 798 So.2d 940 as support for its right to appeal. Alternatively, the PCF argues that review is appropriate under this court's supervisory jurisdiction.
*1063 In Bennett v. Krupkin, the supreme court held that the Louisiana Patient's Compensation Fund Oversight Board (the "Board") had standing to appeal a trial court judgment granting a doctor's exception of prematurity, where the Board asserted that the doctor was not a qualified health care provider under the MMA. When Dr. Krupkin filed an exception of prematurity in response to a suit for damages, the Board intervened to challenge Dr. Krupkin's claim that he was a qualified health care provider. In approving the Board's intervention and appeal from the adverse judgment sustaining Dr. Krupkin's exception of prematurity, the supreme court noted the contested issue of Dr. Krupkin's status as a qualified health care provider involved the threshold question of whether the case properly falls under the MMA. The court found that the Board has the responsibility and authority to manage and defend the PCF as set forth in La. R.S. 40:1299.44(A)(5)(b), La. R.S. 40:1299.44(D)(2)(a), and La. R.S. 40:1299(D)(2)(b)(x), the latter of which specifies the Board's authority to defend the PCF from claims due to the negligence of non-covered health care providers. The court interpreted this as including the authority to oppose "an exception of prematurity filed by a doctor on the grounds that the doctor is a `non-covered health care provider.'"
The supreme court also approved the Board's appeal based on the procedural articles pertaining to intervenors and their right to appeal. The court explained:
Article 1091 provides that "a third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties thereto by: ... (3) Opposing both plaintiff and defendant." La. C.C.P. art. 1091. Article 2086 provides that "[a] person who could have intervened in the trial court may appeal, whether or not any other appeal has been taken." La. C.C.P. art.2086. As a party who could have, and did, intervene in the trial court, the Board has a right to appeal under La. C.C.P. art.2086. Finally, Article 2083 provides in part that "[a]n appeal may be taken from a final judgment rendered in causes in which appeals are given by law...." La. C.C.P. art.2083. The judgment granting Dr. Krupkin's exception of prematurity was a "final judgment."
Bennett v. Krupkin, 798 So.2d at 944.
The First Circuit in Ginn v. Woman's Hospital Foundation, Inc., XXXX-XXXX (La. App. 1st Cir.5/10/02), 818 So.2d 983, reversed on other grounds by XXXX-XXXX (La.4/9/03), 842 So.2d 338, relied on the holding and reasoning of Bennett v. Krupkin, supra, to deny a motion to dismiss an appeal under circumstances analogous to those in the instant matter. Moreover, the First Circuit interpreted the settlement provisions of La. R.S. 40:1299.44(C) as presupposing "the absence of a dispute as to the status of the health care providers involved as qualified health care providers under the Act." Ginn, 818 So.2d at 989. We agree. In reversing the First Circuit's opinion, the supreme court expressed no opinion regarding the propriety of the appeal as that issue was not raised by either party. Ginn, 842 So.2d at 342.
In the instant matter, the PCF intervened to object to a proposed settlement under La. R.S. 40:1299.44(C) between the plaintiffs and Arcadia. The PCF's objection raised the issue of whether Arcadia was a qualified health care provider for purposes of the MMA. Moreover, the PCF's objection questioned whether the settlement between Arcadia and the plaintiffs could fall under the provisions of La. R.S. 40:1299.44(C) since it was not a settlement *1064 between either the insurer or a self-insured health care provider and the claimants/plaintiffs. While La. R.S. 40:1299.44(C)(6) does provide that any settlement approved by the court shall not be appealed, we believe this presupposes that the approved settlement meets the criteria set forth in La. R.S. 40:1299.44(C). The objections of the PCF directly address whether or not the proposed settlement meets these criteria.
We are mindful of jurisprudence holding that the PCF is not a party defendant and cannot contest liability when the health care provider enters a binding settlement for $100,000. See Russo v. Vasquez, 94-2407 (La.1/17/95), 648 So.2d 879; Stuka v. Fleming, 561 So.2d 1371 (La.1990), cert. denied, 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525 (1990); Ceasar v. Barry, 99-0173 (La.App. 3d Cir. 11/2/00), 772 So.2d 331, writ denied, XXXX-XXXX (La.2/2/01), 784 So.2d 8; McGrath v. Excel Home Care, Inc., 01-1270 (La.App. 5th Cir. 3/26/02), 810 So.2d 1283, writ denied, XXXX-XXXX (La.11/27/02), 831 So.2d 284; andSchwarzenburg v. Jackson, 600 So.2d 163 (La. App. 5th Cir.1992). However, we do not view this matter as involving an objection to the settlement of liability between Arcadia and the plaintiffs; rather, it is an objection to settlement under the strict provisions of La. R.S. 40:1299.44(C) under circumstances where it appears that the proposed settlement does not meet the statutory requirements.
Considering the right of appeal afforded an intervening party under the Code of Civil Procedure, the statutory duty of the PCF Oversight Board to defend the PCF, and the fact that the PCF's appeal is from the summary judgment which overruled its objections concerning the applicability of the La. R.S. 40:1299.44(C) to the settlement between the plaintiffs and Arcadia, we find the appeal by PCF to be proper. The motion to dismiss the appeal is hereby denied.[1]
Qualified Health Care Provider
The PCF argues that the trial court erred in granting the plaintiffs' motion for summary judgment because there are genuine issues of material fact concerning Arcadia's status as a qualified health care provider. Although the PCF admits that at the time of the alleged malpractice, Arcadia was considered enrolled in the PCF, the PCF now argues that there is an issue of fact as to whether Arcadia provided proof of financial responsibility as required by La. R.S. 40:1299.42(A)(1) to be qualified under the MMA. In particular, the PCF contends that there must be some showing that Arcadia's insurer or the policy of insurance for the relevant time periods was in compliance with La. R.S. 40:1299.42 and the rules regarding insurance ratings promulgated by the PCF's Oversight Board in the Louisiana Administrative Code.
The purpose of the MMA is to limit the liability of health care providers who qualify by maintaining specified malpractice insurance and by paying a surcharge to the PCF. A qualified health care provider is liable for malpractice only to the extent provided in the MMA, namely a qualified health care provider has no liability for any amount in excess of $100,000 plus interest. La. R.S. 40:1299.42(B)(2); La. R.S. 1299.45(A); Sewell v. Doctors Hospital, 600 So.2d 577 (La.1992).
To obtain the benefit of limitation of liability, a health care provider must become qualified by fulfilling the requirements *1065 of La. R.S. 40:1299.42(A), which provides as follows:
A. To be qualified under the provisions of this Part, a health care provider shall:
(1) Cause to be filed with the board proof of financial responsibility as provided by Subsection E of this Section.
(2) Pay the surcharge assessed by this Part on all health care providers according to R.S. 40:1299.44.
(3) For self-insureds, qualification shall be effective upon acceptance of proof of financial responsibility by and payment of the surcharge to the board. Qualification shall be effective for all others at the time the malpractice insurer accepts payment of the surcharge.
La. R.S. 40:1299.42(A). The requirement of proof of financial responsibility is further explained in La. R.S. 40:1299.42(E)(1) as follows:
E. (1) Financial responsibility of a health care provider under this Section may be established only by filing with the board proof that the health care provider is insured by a policy of malpractice liability insurance in the amount of at least one hundred thousand dollars per claim with qualification under this Section taking effect and following the same form as the policy of malpractice liability insurance of the health care provider, or in the event the health care provider is self-insured, proof of financial responsibility by depositing with the board one hundred twenty-five thousand dollars in money.....
La. R.S. 40:1299.42(A).
These same requirements are reiterated in LAC 37:III.501, et seq., which governs the qualifications, conditions, and procedures required for PCF enrollment. The basic qualifications for enrollment are set forth in LAC 37:III.503, which requires a health care provider as defined by the MMA to demonstrate and maintain financial responsibility, to make an application for enrollment, and to pay the applicable surcharges. Of particular relevance is LAC 37:III.515 which provides as follows:
A. Upon receipt and approval of a completed application (including evidence of financial responsibility pursuant to § 505, § 507, or § 509), and payment of the applicable surcharge by or on behalf of the applicant health care provider, the executive director shall issue and deliver to the health care provider a certificate of enrollment with the fund, identifying the qualified health care provider and specifying the effective date and term of such enrollment and the scope of the fund's coverage for that health care provider.
B. Duplicate or additional certificates of enrollment shall be made available by the executive director to and upon the request of an enrolled health care provider or his or its attorney, or professional liability insurance underwriter when such certification is required to evidence enrollment with the fund in connection with an actual or proposed malpractice claim against the health care provider.[2]
These provisions demonstrate that a health care provider becomes enrolled in the PCF, and thus qualified, upon approval of an application, demonstration of financial responsibility to the satisfaction of the PCF, and payment of the applicable surcharge to the PCF. Upon satisfaction of *1066 these three basic requirements, a certificate of enrollment is issued, and this certificate establishes the health care provider to be a qualified health care provider under the MMA.
At the hearing on the motion for summary judgment and objections to the proposed settlement on January 9, 2003, the plaintiffs filed into evidence a letter dated May 15, 2000, from Cheryl Jackson, Medical Malpractice Insurance Director of the PCF regarding the plaintiffs' malpractice complaint against Arcadia. This letter indicates that Arcadia was enrolled in the PCF on the dates of March 5, 1999, through March 5, 2000, and that it was insured by Reliance Insurance Company. Plaintiffs also introduced a certified copy of Arcadia's certificate of enrollment showing that Arcadia was certified as an "Enrollee under La. R.S. 40:1299.41, et seq.," for the effective dates of March 5, 1999 through March 5, 2000 and March 5, 2000 through March 5, 2001. The certified copy of the certificate of enrollment signed by the Malpractice Insurance Director who issued the certificate is presumed to be genuine and full proof of its contents. La. R.S. 13:3712; Goins v. Texas State Optical, Inc., 463 So.2d 743 (La.App. 4th Cir. 1985). The certificate demonstrates that Arcadia fulfilled the requirements to become a qualified health care provider.
We find no merit in the PCF's argument that there is a genuine issue of fact as to Arcadia's status as a qualified health care provider. The certified copy of the certificate of enrollment offered in support of the plaintiffs' motion for partial summary judgment is sufficient to demonstrate Arcadia's status as a qualified health care provider. When a motion for summary judgment is made and properly supported, the adverse party cannot rest on the mere allegations or denials of his pleading, but he must respond with specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967. The PCF's bare assertion that the plaintiffs failed to prove that Arcadia's insurance policy met the requirements for proof of financial responsibility, particularly in light of the fact that a certificate of enrollment was issued to Arcadia and that certificates are not issued until proof of financial responsibility is provided by the enrollee, does not create a genuine issue for trial. Accordingly, summary judgment overruling the PCF's objection to the proposed settlement based on Arcadia's status as a qualified health care provider was properly granted.
Settlement Under La. R.S. 40:1299.44(C)
The PCF asserts that Ginn v. Woman's Hospital Foundation, Inc., XXXX-XXXX (La.4/9/03), 842 So.2d 338, an opinion rendered shortly after the trial court overruled the PCF's objections and approved the settlement, mandates reversal of the trial court's judgment. Considering the supreme court's strict analysis of La. R.S. 40:1299.44(C) in Ginn, supra, we are constrained to agree with the PCF's assertion.[3]
*1067 At issue in Ginn, supra, was whether La. R.S. 40:1299.44(C) applies when the health care provider, and not its insurer, agrees to settle its liability with the plaintiff, pays $100,000 and the plaintiff demands excess damages from the PCF. The plaintiff had asserted claims dealing with transfusions of contaminated blood which caused her to contract hepatitis C. Some of the claims were covered by the MMA and some were not. The plaintiff and the hospital agreed to a settlement and petitioned the court for approval. Under the proposed settlement, the hospital would pay the plaintiff $100,000 and be fully released from liability. Plaintiff would seek additional damages from the PCF. The PCF intervened to oppose the settlement on the grounds that the hospital was not a qualified health care provider and that the plaintiff's claim was not covered by the MMA. After a hearing, the trial court approved the settlement between the plaintiff *1068 and the hospital. Pursuant to the judgment, liability for damages was deemed established and admitted, and the plaintiff was granted the right to seek additional damages from the PCF. The judgment was affirmed on appeal, then the supreme court granted writs to consider whether the requirements of La. R.S. 40:1299.44(C) were satisfied.
In determining that the requirements of La. R.S. 40:1299.44(C) were not satisfied, the court closely examined the statutory language and concluded as follows:
The language of La. R.S. 40:1299.44(C) clearly states that the procedures outlined in its provisions apply when the insurer of a health care provider or a self-insured health care provider has agreed to settle its liability with the claimant and the claimant is demanding an amount in excess of the settlement from the Fund for a complete and final release. Moreover, subsection 1299.44(C) consistently and solely indicates the participants in the court approval of the settlement provided for under its provisions are to be the insurer of the health care provider or the self-insured health care provider, the claimant, and the board. La. R.S. 40:1299.44(C)(5) clearly contemplates the involvement of the insurer, rather than the health care provider, in the hearing for court approval of the settlement as it provides only that the board, the claimant, and the insurer of the health care provider (or the self-insured health care provider) may introduce relevant evidence before the court. Finally, section 1299.44(C)(5) explicitly provides that the liability of the health care provider shall be considered as admitted and established where the insurer has paid its policy limits of $100,000. After considering these provisions, we find the plain language of La. R.S. 40:1299.44(C) is clear, unambiguous, and does not lead to absurd consequences. Consequently, we conclude La. R.S. 40:1299.44(C) applies only when the insurer of the health care provider or the self-insured health care provider agrees to settle its liability on the claim against its insured and claimant demands excess damages from the Fund.
Ginn, 842 So.2d at 344.
Considering the supreme court's analysis of the plain and unambiguous statutory language and its conclusion that La. R.S. 40:1299.44(C) requires either the insurer of a health care provider or a self-insured health care provider as participants in the settlement, we must conclude that the trial court erred in approving the settlement in the instant matter which was a settlement between the health care provider (Arcadia) and the plaintiff. It is undisputed that Arcadia is not a self-insured health care provider. As such, Arcadia's insurer would have been the proper participant for purposes of a settlement under the provisions of La. R.S. 40:1299.44(C). Nothing in La. R.S. 40:1299.44(C) authorizes a settlement between a health care provider and a claimant.
The plaintiffs and Arcadia both refer to the fact that Arcadia's insurer went into liquidation during the course of litigation and that it is no longer a participant. They assert that it is now impossible for a settlement to occur and that a strict application of Ginn, supra, would force parties to litigate rather than settle. They also attempt to factually distinguish Ginn, supra, from the present matter.
While there are factual distinctions between the instant case and Ginn, supra, such distinctions do not override the supreme court's analysis of La. R.S. 40:1299.44(C). The supreme court's interpretation of the statute was based on a strict interpretation of the statutory language *1069 and was not influenced by underlying factual considerations. The supreme court did discuss as an initial matter the fact that the lower courts erred in including in the settlement claims not governed by the MMA. However, the court then went on to base its decision on its interpretation of La. R.S. 40:1299.44(C). The interpretation set forth in Ginn, supra, is controlling in this matter and requires reversal of the trial court's judgment granting the plaintiffs' motion for partial summary judgment, overruling the PCF's objection to participation in the settlement by the health care provider, and approving the settlement.[4]
The PCF asserts that in the absence of strict compliance with La. R.S. 40:1299.44(C), there are no other provisions under the MMA under which it can be made to pay excess damages when the health care provider settles with the plaintiff. The plaintiffs and Arcadia fear that they may be forced to litigate rather than settle. With these assertions in mind, we refer the parties to La. R.S. 40:1299.42(D)(5) which provides as follows:
(5) In the event that a partial settlement is executed between the defendant and/or his insurer with a plaintiff for the sum of one hundred thousand dollars or less, written notice of such settlement shall be sent to the board. Such settlement shall not bar the continuation of the action against the patient's compensation fund for excess sums in which event the court shall reduce any judgment to the plaintiff in the amount of malpractice liability insurance in force as provided for in R.S. 40:1299.42(B)(2).
La. R.S. 40:1299.42(D)(5).
In reaching its decision in Ginn, supra, the court discussed the fact that the legislature distinguished a settlement under La. R.S. 40:1299.44(C) between the insurer of a health care provider or a self-insured health care provider and a plaintiff from a settlement under La. R.S. 40:1299.42(D)(5) between a health care provider and/or an insurer and the plaintiff. Furthermore, the court left open the question of whether La. R.S. 40:1299.42(D)(5) applies in situations where La. R.S. 40:1299.44(C) is inapplicable. Although the court recognized the holding of Horil v. Scheinhorn, 95-0967 (La.11/27/95), 663 So.2d 697, that the provisions of La. R.S. 40:1299.44(C) must be closely followed where the settling claimant expects to ultimately recover from the PCF, the court noted that the applicability of La. R.S. 40:1299.44(C) was not questioned in Horil, supra. Here, the unusual circumstances of Arcadia's insurer being placed into liquidation during the course of litigation makes La. R.S. 40:1299.44(C) inapplicable for the reasons expressed in Ginn, supra. However, the question of the applicability of La. R.S. 40:1299.42(D)(5) remains open.

CONCLUSION
For the reasons expressed, the motion to dismiss the appeal is denied. In light of the holding in Ginn, supra, interpreting the clear and unambiguous language of La. R.S. 40:1299.44(C), we conclude that the trial court erred granting the plaintiffs' motion for partial summary judgment, overruling the PCF's objection thereto, and approving the settlement under the provisions of La. R.S. 40:1299.44(C). The judgment of the trial court rendered March 3, 2003 is hereby reversed, and the matter is remanded for further proceedings. Costs are assessed equally between the plaintiffs and Arcadia.
REVERSED.
*1070 MATTER REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] We also find this matter subject to review through exercise of our supervisory jurisdiction under La. C.C.P. art. 2201 and La. Const. Art. 5, § 10.
[2] In the Louisiana Administrative Register, Volume 29, Issue 3 of March 20, 2003(29:3 La. Reg. 344), the PCF Oversight Board indicated its intent to amend § 515(B) to provide "when such certification is required to evidence enrollment or qualification with the fund...." (Emphasis added.)
[3] La. R.S. 40:1299.44(C) provides:

C. If the insurer of a health care provider or a self-insured health care provider has agreed to settle its liability on a claim against its insured and claimant is demanding an amount in excess thereof from the patient's compensation fund for a complete and final release, then the following procedure must be followed:
(1) A petition shall be filed by the claimant with the court in which the action is pending against the health care provider, if none is pending in the parish where plaintiff or defendant is domiciled seeking (a) approval of an agreed settlement, if any, and/or (b) demanding payment of damages from the patient's compensation fund.
(2) A copy of the petition shall be served on the board, the health care provider and his insurer, at least ten days before filing and shall contain sufficient information to inform the other parties about the nature of the claim and the additional amount demanded.
(3) The board and the insurer of the health care provider or the self-insured health care provider as the case may be, may agree to a settlement with the claimant from the patient's compensation fund, or the board and the insurer of the health care provider or the self-insured health care provider as the case may be, may file written objections to the payment of the amount demanded. The agreement or objections to the payment demanded shall be filed within twenty days after the petition is filed.
(4) As soon as practicable after the petition is filed in the court the judge shall fix the date on which the petition seeking approval of the agreed settlement and/or demanding payment of damages from the fund shall be heard, and shall notify the claimant, the insurer of the health care provider or the self-insured health care provider as the case may be, and the board thereof as provided by law.
(5) At the hearing the board, the claimant, and the insurer of the health care provider or the self-insured health care provider as the case may be, may introduce relevant evidence to enable the court to determine whether or not the petition should be approved if it is submitted on agreement without objections. If the board, the insurer of the health care provider or the selfinsured health care provider as the case may be, and the claimant cannot agree on the amount, if any, to be paid out of the patient's compensation fund, then the court shall determine the amount of claimant's damages, if any, in excess of the amount already paid by the insurer of the health care provider. The court shall determine the amount for which the fund is liable and render a finding and judgment accordingly. In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.
(6) Any settlement approved by the court shall not be appealed. Any judgment of the court fixing damages recoverable in any such contested proceeding shall be appealable pursuant to the rules governing appeals in any other civil court case tried by the court.
(7) For the benefit of both the insured and the patient's compensation fund, the insurer of the health provider shall exercise good faith and reasonable care both in evaluating the plaintiff's claim and in considering and acting upon settlement thereof. A self-insured health care provider shall, for the benefit of the patient's compensation fund, also exercise good faith and reasonable care both in evaluating the plaintiff's claim and in considering and acting upon settlement thereof.
(8) The parties may agree that any amounts due from the patient's compensation fund pursuant to La. R.S. 40:1299.44(B) be paid by annuity contract purchased by the patient's compensation fund for and on behalf of the claimant.
(9) Notwithstanding any other provision of this Part, any self-insured health care provider who has agreed to settle its liability on a claim and has been released by the claimant for such claim or any other claim arising from the same cause of action shall be removed as a party to the petition, and his name shall be removed from any judgment that is rendered in the proceeding. Such release shall be filed with the clerk of court in the parish in which the petition is filed upon the filing of a properly executed, sworn release and settlement of claim.
[4] Because of this ruling, we will not address the assignments of error regarding the denial of the PCF's exception of no cause of action and the delineation of the settlement amount.