CARAWAY, J.
 

 11 After plaintiffs instituted a medical malpractice action in district court, the Louisiana Patient’s Compensation Fund (“PCF”) notified plaintiffs that defendant hospital was not a qualified health care provider. The defendant filed an exception of prematurity contending otherwise. After two hearings, the trial court granted the exception of prematurity on the grounds that the defendant was a qualified health care provider. The plaintiffs appeal. Finding no error in the judgment, we affirm.
 

 Facts
 

 Justin Dean Roark, Sr. was admitted to an Alexandria, Louisiana hospital with complaints of severe auditory hallucinations, paranoia and suicidal ideations. Upon the stabilization of Roark’s condition, he was transferred to the Lillian Louise Behavioral Hospital (“Lillian Louise”) in Farmerville, Louisiana on August 18, 2007. Lillian Louise is owned and operated by Liberty Healthcare Systems, LLC (hereinafter “Liberty Healthcare”). Roark was admitted with complaints of leg pain and sore throat. On August 25, 2007, Roark complained to his sister that his throat was swelling. After a Lillian Louise employee checked his oxygen levels, Roark fell asleep. Roark died later that day due to air passage obstruction caused by acute epiglottitis.
 

 On August 20, 2008, Roark’s wife Cheryl, individually, and on behalf of the couple’s two minor children, filed a malpractice complaint under the Louisiana Medical Malpractice Act (“MMA”) with the Louisiana Division of Administration and a malpractice suit in district court against Liberty |2Healthcare and eight employees of Liberty Healthcare who were assigned the care of Roark on the day he died. On August 27, 2008, the Louisiana PCF sent correspondence to plaintiffs’ attorney acknowledging receipt of plaintiffs’ claim and advising as follows:
 

 Please be advised that Liberty Healthcare System, LLC is not qualified as it pertains to this complaint.
 

 In response to the suit, Liberty Healthcare filed an exception of prematurity, urging its status as a qualified health care provider which required plaintiffs’ claims to first be presented to a medical review panel. Liberty Healthcare filed a memorandum with attached exhibits in support of the claim that Liberty Healthcare and its employees were qualified health care providers. The exhibits included a copy of a document from the Louisiana Secretary of State, Commercial Division Corporations Database, which showed that Liberty
 
 *971
 
 Healthcare Systems, LLC formerly operated under the name Lillian Louise Behavioral Health Hospital. Liberty Healthcare also attached an October 21, 2008 copy of a “Certificate of Enrollment” from the PCF which purportedly showed that Lillian Louise Behavioral Health Hospital, d/b/a Liberty Healthcare Systems, was a qualified health care provider for the period January 7, 2007-January 7, 2008 (covering the date of the alleged tortious act). Liberty Healthcare also submitted an October 9, 2008 copy of another “Certificate of Enrollment” for Liberty Healthcare Systems, LLC covering the period of January 31, 2008-January 7, 2009.
 

 An initial hearing on the exception of prematurity occurred on October 23, 2008. At the hearing, Liberty Healthcare’s counsel conceded [sthat the PCF had issued a letter to plaintiffs denying Liberty Healthcare’s qualified health care provider status. Counsel explained that the letter was in error because the PCF records failed to recognize the name change from Lillian Louise to Liberty Healthcare that occurred in December 2006 or January 2007. Counsel argued that the PCF ultimately issued two separate certificates of enrollment in both the current and former name for Liberty Healthcare, which were
 
 prima facie
 
 evidence of Liberty Healthcare’s qualified health care provider status.
 

 Plaintiffs argued that further discovery was needed and requested a continuance of the matter. Counsel also objected to the documents submitted by Liberty Healthcare in support of the exception on the grounds of lack of authentication. Ultimately the parties agreed to continue the matter until December 18, 2008, and the trial court submitted the entire record into evidence without objection.
 

 On December 16, 2008, Liberty Healthcare submitted a second supplemental memorandum in support of the exception of prematurity. Attached were copies of Liberty Healthcare’s answers to plaintiffs’ first set of interrogatories on December 10, 2008. Liberty Healthcare argued that the interrogatories established that the subject facility was initially known as Lillian Louise Behavioral Health Hospital, LLC which was founded in 2003. After the buyout of a partner, the name of the facility was changed to the current name of Liberty Healthcare Systems, LLC. Attached to the answers to the interrogatories were another copy of the Certificate of Enrollment for Liberty Healthcare from January 31, 2008-January 7, 2009, |4and a claims-made insurance policy issued by Evanston Insurance Company to Liberty Healthcare, effective January 7, 2008, through January 7, 2009, which Liberty argued established its qualified health care provider status as well as insurance coverage.
 

 At the December 18, 2008 hearing, counsel for Liberty Healthcare submitted the above-noted memoranda and attachments into evidence without objection by plaintiffs. Counsel for defendants argued that the certificates of enrollment were
 
 piima facie
 
 evidence that Liberty Healthcare was a qualified health care provider and that the contrary PCF letter was submitted in error. Counsel for plaintiffs submitted three letters requesting discovery from defendants after the previous hearing and argued that defendants had failed to respond to discovery until December 12, 2008, when the above-noted answers to interrogatories were hand-delivered to defendants. Counsel also argued that the documentation submitted by defendants to support the exception was inadequate proof. After hearing the arguments of counsel, the trial court took the matter under advisement.
 

 On January 21, 2009, the trial court rendered judgment granting Liberty
 
 *972
 
 Healthcare’s exception of prematurity without prejudice on the ground that Liberty Healthcare had shown by
 
 prima fade
 
 evidence through the submitted certificates of enrollment that it was a qualified health care provider under the MMA. This appeal followed.
 

 Discussion
 

 The purpose of the MMA is to limit the liability of health care providers who qualify by maintaining specified malpractice insurance and | ñby paying a surcharge to the PCF. A qualified health care provider is liable for malpractice only to the extent provided in the MMA, namely a qualified health care provider has no liability for any amount in excess of $100,000 plus interest. La. R.S. 40:1299.42(B)(2); La. R.S. 40:1299.45(A);
 
 Sewell v. Doctors Hospital,
 
 600 So.2d 577 (La.1992);
 
 Roberson v. Arcadia Healthcare Ctr., Inc.
 
 37,761 (La.App.2d Cir.7/9/03), 850 So.2d 1059.
 

 To obtain the benefit of limitation of liability, a health care provider must become qualified by fulfilling the requirements of La. R.S. 40:1299.42(A), which provides as follows:
 

 A. To be qualified under the provisions of this Part, a health care provider shall:
 

 (1) Cause to be filed with the board proof of financial responsibility as provided by Subsection E of this Section.
 

 (2) Pay the surcharge assessed by this Part on all health care providers according to R.S. 40:1299.44.
 

 (3) For self-insured health care providers, initial qualification shall be effective upon acceptance of proof of financial responsibility by and payment of the surcharge to the board. Initial qualification shall be effective for all other health care providers at the time the malpractice insurer accepts payment of the surcharge.
 

 The requirement of proof of financial responsibility is further explained in La. R.S. 40:1299.42(E)(1) as follows:
 

 E. (1) Financial responsibility of a health care provider under this Section may be established only by filing with the board proof that the health care provider is insured by a policy of malpractice liability insurance in the amount of at least one hundred thousand dollars per claim with qualification under this Section taking effect and following the same form as the policy of malpractice liability insurance of the health care provider, or in the event the health care provider is self-insured, proof of financial responsibility by depositing with the board one hundred twenty-five thousand dollars in money or represented by irrevocable letters of credit, federally insured certificates of deposit, bonds, securities, cash values of insurance, or any other security approved by the board. In the event any portion of said amount is seized pursuant to the | ¿judicial process, the self-insured health care provider shall have five days to deposit with the board the amounts so seized. The health care provider’s failure to timely post said amounts with the board shall terminate his enrollment in the Patient’s Compensation Fund.
 

 These same requirements are reiterated in LAC 37:111.501,
 
 et seq.,
 
 which governs the qualifications, conditions, and procedures required for PCF enrollment. The basic qualifications for enrollment are set forth in LAC 37:111.503, which requires a health care provider as defined by the MMA to demonstrate and maintain financial responsibility, to make an application for enrollment, and to pay the applicable surcharges. Of particular relevance is LAG 37:111.515 which provides as follows:
 

 A. Upon receipt and approval of a completed application (including evidence of
 
 *973
 
 financial responsibility pursuant to § 505, § 507 or § 509) and payment of the applicable surcharge by or on behalf of the applicant health care provider, the executive director shall issue and deliver to the health care provider a certificate of enrollment with the fund, identifying the qualified health care provider and specifying the effective date and term of such enrollment and the scope of the fund’s coverage for that health care provider.
 

 B. Duplicate or additional certificates of enrollment shall be made available by the executive director to and upon the request of an enrolled health care provider or his or its attorney, or professional liability insurance underwriter when such certification is required to evidence enrollment with the fund in connection with an actual or proposed malpractice claim against the health care provider.
 

 These provisions demonstrate that a health care provider becomes enrolled in the PCF, and thus qualified, upon approval of an application, demonstration of financial responsibility to the satisfaction of the PCF, and payment of the applicable surcharge to the PCF. Upon satisfaction of these three basic requirements, a certificate of enrollment is issued, and this certificate establishes the health care provider to be a qualified health care provider under the MMA.
 
 Roberson, supra.
 

 17The MMA does not provide coverage to health care providers who fail to qualify as health care providers under its provisions prior to commission of the tor-tious conduct.
 
 Abate v. Healthcare Int’l Inc.,
 
 560 So.2d 812 (La.1990). The courts have interpreted
 
 Abate, supra,
 
 to require that in order to be covered by the MMA, a physician who had a “claims made” policy must be qualified under the act at the time of the alleged tortious conduct as well as when the claim is made.
 
 Clark v. Ransom,
 
 595 So.2d 710 (La.App. 5th Cir.1992),
 
 writ denied,
 
 597 So.2d 1028 (La.1992);
 
 Williams v. Golden,
 
 611 So.2d 718 (La.App. 4th Cir.1992).
 

 The dilatory exception of prematurity provided in La. C.C.P. art. 926 questions whether the cause of action has matured to the point where it is ripe for judicial determination.
 
 Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson,
 
 04-0451 (La.12/01/04), 888 So.2d 782. Under the MMA, a medical malpractice claim against a private qualified health care provider is subject to dismissal on a timely filed exception of prematurity if such claim has not first been reviewed by a pre-suit medical review panel. La. R.S. 40:1299.47;
 
 Williamson, supra.
 
 The burden of proving prematurity is on the exceptor. Therefore, the defendant health care provider must show that it is entitled to a medical review panel.
 
 Williamson, supra.
 

 In the context of the pre-suit medical review panel, La. R.S. 40:1299.47 makes reference to the “certificate of enrollment” issued by the PCF, as follows:
 

 B. (l)(a)(i) No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant’s proposed complaint has been presented to a medical review panel established pursuant to this Section.
 

 Is(ii) A certificate of enrollment issued by the board shall be admitted in evidence.
 

 This is the only reference to the “certificate of enrollment” in the MMA. On this statutory authority for the allowance for the “certificate of enrollment” as evidence, the jurisprudence holds such certificate is competent evidence to establish a
 
 pnma facie
 
 case for the applicability of the medical malpractice law regarding claims
 
 *974
 
 against the party identified on the certificate. La. R.S. 13:3711, 3712;
 
 Hill v. Brentwood Hosp.,
 
 480 So.2d 875 (La.App. 2d Cir.1985);
 
 Goins v. Texas State Optical, Inc.,
 
 463 So.2d 743 (La.App. 4th Cir.1985).
 

 Plaintiffs’ first assignment of error questions the trial court’s consideration of the documentary evidence attached to the memoranda of Liberty Healthcare. Specifically, regarding the certificates of enrollment from the PCF, plaintiffs claim that the documents were not authenticated. The certificates of enrollment are copies of a form document issued under the letterhead of the Louisiana Division of Administration. The documents appear to be signed by the executive director of the PCF, but contain no formal certification by the governmental body.
 

 Despite the lack of authentication of the certificates, the record reveals that the certificates were offered into evidence at both hearings. While counsel for plaintiffs directly questioned the lack of authentication of the documents at the first hearing, he did not raise that flaw at the second hearing but instead directly responded with “no objection” to Liberty Healthcare’s offering of the documents attached to its memoranda. Clearly, | ¡¡this was not raised as an evidentiary objection at the second hearing, and the copies of the certificates of enrollment were received in evidence and could be considered in the court’s ruling.
 

 Next, plaintiffs argue that the conflict between the August 27, 2008 letter from the PCF and its later certificates leaves in dispute the issue of Liberty Healthcare’s status as a qualified provider. Citing
 
 Abate v. Healthcare Int'l, Inc., supra,
 
 plaintiffs argue that Liberty Healthcare was required to prove that it (i) is a licensed health care provider; (ii) applied for qualified health care provider status on forms prescribed by the PCF; (iii) provided proof of financial responsibility; and (iv) paid the surcharge to the PCF.
 

 The two certificates of enrollment were issued in October 2008, after the earlier letter of August 27. The August letter did not say that Liberty Healthcare was not a qualified health care provider in Louisiana, but instead attempted to make a judgment about Liberty Healthcare’s status “as it pertains to this complaint.” The PCF’s response did not address the effect of the prior status of “Lillian Behavioral Health Hospital, DBA Liberty Healthcare Systems,” which was later revealed to be a qualified health care provider by the certificate of enrollment issued in October. Most importantly, the “certificate of enrollment” is the statutorily authorized representation from the PCF which shall serve as “evidence” for resolution of such disputes over a health care provider’s status under the MMA. La. R.S. 40:1299.47(B)(1). Therefore, the August 27, 2008 letter which 110occurred before the issuance of the certificates of enrollment in this case is shown to be in error by the PCF’s later actions.
 

 Additionally, although the MMA does not specifically address the necessary information to be provided by the “certificate of enrollment,” we find that the two certificates reveal the criteria to establish a
 
 prima facie
 
 case for the applicability of the MMA to this claim against Liberty Healthcare. Both certificates list Liberty Healthcare as an enrollee for the year in which the alleged malpractice occurred and the year in which the claim was made. They show Liberty Healthcare’s financial responsibility by listing the insurance that it carried in both years with Evanston Insurance Company. Both certificates state that surcharges for excess coverage were paid. Accordingly, the certificates of enrollment adequately established the
 
 pri-ma facie
 
 case that Liberty Healthcare is a
 
 *975
 
 qualified health care provider under the MMA regarding plaintiffs’ claim. Since we find that plaintiffs produced no evidence disputing Liberty Healthcare’s status, we affirm the trial court’s ruling.
 

 Conclusion
 

 For the foregoing reasons, the ruling of the trial court is affirmed. Costs of these proceedings are assessed to appellants.
 

 AFFIRMED.
 

 APPLICATION FOR REHEARING
 

 Before WILLIAMS, GASKINS, CARAWAY, PEATROSS and LOLLEY, JJ.
 

 Rehearing denied.