# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 09-546

**JEANETTE HERNANDEZ, ET AL.**

**VERSUS**

**DIVERSIFIED HEALTHCARE-ABBEVILLE, LLC D/B/A MAISON DU MONDE LIVING CENTER**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 88592-D
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

\* \* \* \* \* \* \* \* \* \*

### SHANNON J. GREMILLION
### JUDGE

\* \* \* \* \* \* \* \* \* \*

Court composed of Oswald A. Decuir, Michael G. Sullivan, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**Lawrence N. Curtis**
**Attorney at Law**
**P. O. Box 80247**
**Lafayette, LA 70598-0247**
**(337) 235-1825**
**Counsel for Plaintiffs/Appellants:**
**Jeanette Hernandez**
**Alvin Hernandez, Jr.**
**Shawn P. Hernandez**
**Matthew D. Hernandez**
**Kansas A. Hernandez**
**Estate of Alvin Hernandez, Sr.**

**Troy Allen Broussard**
**Allen & Gooch**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1000**
**Counsel for Defendant/Appellee:**
**Diversified Healthcare-Abbeville, LLC dba**
**Maison du Monde Living Center**

**GREMILLION, Judge.**

The plaintiffs, the widow and major children of Alvin Hernandez, Sr., appeal the judgment in favor of the defendant, Diversified Healthcare-Abbeville, LLC d/b/a Maison du Monde Living Center, sustaining its exception of prematurity. The trial court found that the plaintiffs' claims sounded in medical malpractice and, therefore, must first be submitted to the medical review panel. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs filed suit in April 2009, for the wrongful death of their husband and father in October 2007. Alvin had been a resident of Maison du Monde from January through September 2007. The allegations in the petition assert that Maison du Monde failed to deliver appropriate custodial care and failed to prevent the mistreatment, abuse, and neglect of Alvin. The plaintiffs asserted a cause of action pursuant to La.R.S. 40:2010.9(A), the civil enforcement provisions of the nursing home residents Bill of Rights found in La.R.S. 40:2010.8. Diversified filed a dilatory exception of prematurity and of vagueness arguing that Maison was a qualified health care provider subject to the provisions of the Medical Malpractice Act found in La.R.S. 40:1299.1 et seq. Following a hearing in September 2008, the trial court granted Diversified's exception of prematurity. The plaintiffs now appeal.

## DISCUSSION

We conduct a de novo review of the trial court's grant of the dilatory exception of prematurity as the issue of whether a claim sounds in medical malpractice involves a question of law. *Eldridge v. Heritage Manor, L.L.C.,* 06-718 (La.App. 3 Cir. 11/02/06), 942 So.2d 743. Pursuant to La.R.S. 40:1299.47(B), causes

1

of action sounding in medical malpractice must first be submitted to a medical review panel. Failure to do so renders a plaintiff's petition premature. *Id.*

Louisiana Revised Statute 40:1299.41(A)(8) defines medical malpractice as:

> [A]ny unintentional tort or any breach of contract based on heath care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of the patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.

"Health care" is defined in La.R.S. 40:1299.41(9) as:

> [A]ny act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider, for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement, or during or relating to or in connection with the procurement of human blood or blood components.

Nursing homes are specifically listed as health care providers in La.R.S. 40:1299.41(A)(1), and there is no dispute that Maison is a qualified health care provider. In *Coleman v. Deno,* 01-1517, pp. 17-18 (La.2002), 813 So.2d 303, 315-316, the supreme court set forth the factors used to determine whether a health care provider's conduct falls under the ambit of malpractice:

> (1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill,
>
> (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached,
>
> (3) whether the pertinent act or omission involved the assessment of the patient's condition,
>
> (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is

2

licensed to perform,

(5) whether the injury would have occurred if the patient had not sought treatment, and

(6) whether the tort alleged was intentional.

The allegations in the plaintiffs' petition state in part:

> The Maison du Monde knew or should have known that is was chronically understaffed, and/or improperly staffed with inexperienced or improperly trained personnel and, therefore, the staff of the Maison du Monde could not meet the minimum basic life needs of a weak and vulnerable resident like Alvin A. Hernandez, Sr. The harm inflicted upon the person of Alvin A. Hernandez, Sr. while a resident of the Maison du Monde consisted of, among other things, no less than thirteen (13) separate incidents where Alvin A. Hernandez, Sr. suffered a fall. . . . which culminated in the incident of September 9, 2007 causing Alvin A. Hernandez, Sr. to suffer severe and ultimately fatal injuries including, but not limited to, blunt trauma to the right hemithorax, multiple rib fractures on the right, a collapsed lung, contusions to the right upper extremity, and bruising to the posterior back.
>
> . . . .

### 19.

> That, the Maison du Monde breached this duty by failing to deliver custodial care and services that a reasonably careful person would have provided under similar circumstances by failing to prevent the mistreatment, abuse and neglect of Alvin A. Hernandez, Sr.
>
> . . . .

### 22.

> That, the ordinary negligence of the Maison du Monde included . . . :
>
> a) in that the Maison du Monde failed to provide a sufficient number of individuals to staff its facility to ensure that Alvin A. Hernandez, Sr.'s custodial care needs could be met;
>
> b) in that the Maison du Monde failed to provide adequate training and supervision to its employees in order to prevent the physical abuse and mistreatment foisted upon Alvin A. Hernandez, Sr.;
>
> c) in that the Maison du Monde failed to treat Alvin A. Hernandez, Sr.

3

with courteous [sic], respect and dignity while a resident at is [sic] facility;

d) in that the Maison du Monde failed to monitor and observe Alvin A. Hernandez, Sr. at intervals demanded by his custodial needs in order to assure his safety from falls and/or other injuries;

e) in that the Maison du Monde failed to adopt adequate guidelines, policies and procedures for the protection of its residents who were susceptible to falls and/or other injuries, and

f) in the alternative, the Maison du Monde failed to follow its own guidelines, policies and procedures for the protection of its residents who were susceptible to falls and/or other injuries[.]

Alvin's death certificate is in the record and lists the causes of death as malnutrition, dehydration, failure to thrive, and Alzheimer's dementia. Alvin's records reveal that he was taking multiple medications and had been diagnosed with Alzheimer's, dementia, hypertension, coronary artery disease, depression, hyperlipidemia, benign prostatic hyperplasia, cerebrovascular insult, and cerebrovascular accident.

The plaintiffs attempt to argue that Maison breached its duty to Hernandez by failing to provide adequate staff at the nursing home. They suggest that the staff were improperly trained and did not monitor or observe Alvin adequately. We find this phraseology does not circumvent the requirement that the claim must be first submitted to the medical review panel.

Considering the *Coleman* factors, we agree with the trial court that the allegations set forth in the plaintiffs' petition fall under the ambit of care and treatment, thus requiring presentment to a medical review panel. The decedent's serious medical conditions required the knowledge and expertise of medical professionals. Further, there is no doubt that expert medical evidence will be required to determine if there has been a breach of the standard of care. There can be no way

4

to assess the fault of the nursing home without reference to Alvin's extensive medical and pharmacological needs and the care and treatment that was rendered to him by the staff. The level of supervision and monitoring required by a patient necessarily requires an assessment of his medical condition and capabilities. It is clear from the record that Alvin was not in the nursing home merely for custodial care, but for treatment of a host of medical conditions.

This case is easily distinguished from those cited by the plaintiffs. In *LaFonta v. Hotard Coaches, Inc.,* 07-0454 (La.App. 4 Cir. 10/10/07), 969 So.2d 686, *writ denied*, 07-2208 (La. 1/11/08), 972 So.2d 1166, the defendant nursing home failed to comply with the mandatory evacuation of the New Orleans area in advance of Hurricane Katrina. In both *Richard v. Louisiana Extended Care Centers, Inc.*, 02-0978 (La. 1/14/03), 835 So.2d 460, and *Munson v. Lakewood Quarters, L.P.*, 06-1428 (La.App. 1 Cir. 7/18/07), 965 So.2d 448, the cases were remanded for full evidentiary hearings because there was insufficient evidence to determine if the failure to secure a patient in a wheelchair constituted medical malpractice. *Quinney v. Summit of Alexandria*, 05-237 (La.App. 3 Cir. 6/1/05), 903 So.2d 1226, and *Henry v. West Monroe Guest House, Inc.*, 39,442 (La.App. 2 Cir. 3/2/05), 895 So.2d 680, *writ denied*, 05-875 (La. 5/13/05), 902 So.2d 1032, both involved the nursing home's failure to keep the resident clean and free of waste/change diapers regularly thereby causing the residents to lose their dignity. In *Wild v. NS'NG, Inc.,* 04-933 (La.App. 1 Cir. 12/30/04), 898 So.2d 466, the nursing home left a door unlocked and the resident walked out the door and tripped on an uneven surface. In *Terry v. Red River Center Corp.,* 37,991 (La.App. 2 Cir. 12/10/03), 862 So.2d 1061, *writ denied*, 04-0094 (La. 3/19/04), 869 So.2d 856, the issue revolved around the nursing home's

5

failure to honor the last wishes of the resident when it attempted to resuscitate her despite a DNR order. Finally, *Jordan v. Stonebridge, L.L.C.,* 03-588 (La.App. 5 Cir. 11/25/03), 862 So.2d 181, *writ denied*, 03-3520 (La. 3/19/04), 869 So.2d 851, involved an obese resident whose orders indicated that two people were required for transfers. An orderly tried to move the resident without assistance in direct violation of the order. All of these cases are distinguishable from the facts present in this case. As Diversified points out succinctly in its brief:

> Knowing that feces should be cleaned from a resident's body, that a wheelchair should be in proper working order before being used, that water should not be allowed to stand on a floor where residents (or visitors) may traverse does not relate to treatment or professional skill or judgment. Assessing a resident (with his own unique medical picture, medications and limitations) on a continuing basis to determine what level of supervision or monitoring is required, on the other hand, absolutely requires and relates to treatment and professional skill. Furthermore, the allegations relating to improperly training the nursing home staff, improperly staffing the nursing home, and understaffing the nursing home all directly relate to the professional judgment of the nursing home in the context of the specific nursing home population and the medical and physical needs of that population.

Considering that the plaintiffs allege that Alvin's alleged wrongful death was due to the inactions of the nursing home that he was discharged from a month prior and the multiple causes of death listed on the death certificate, it is without a doubt that extensive expert testimony will be necessary to establish if the nursing home breached the standard of care. It would otherwise be impossible to determine if the alleged understaffing is what led to Alvin's death.

As to factor three, again, assessment of the patient's capabilities and needs, and requirement for supervision based on his particular medical facts and limitations, is necessary to determine the responsibility of the nursing home. Moreover, the guidelines and procedures instituted by the nursing home in caring for

patients with complicated medical needs requires the professional judgment and skill of those schooled in the area of health care. Plaintiffs argue that any lay person could determine that Alvin needed assistance to prevent falls; otherwise, he would have continued to live independently. We find this argument lacks merit and presumes that every nursing home patient is prone to falling.

It is clear that Alvin required around-the-clock medical and nursing care, which necessitated the existence of a doctor-patient relationship. He was not at the nursing home merely for custodial care. We find that issues of staffing at the nursing home and the actions or inactions of the nursing home staff in relation to Alvin's medical needs and condition, fall squarely within the medical malpractice arena. The responsibilities of the nursing home, along with assessments of care given based on Alvin's needs, certainly will require expert testimony. Additionally, there are no allegations that the conduct complained of was intentional. Accordingly, we affirm the trial court's grant of the defendant's dilatory exception of prematurity. All costs of this appeal are assessed against the plaintiffs-appellants.

**AFFIRMED**.