# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

# CA 24-127

**LLOYD RILEY AND TIMOTHY RILEY, INDIVIDUALLY**

**AND ON BEHALF OF THE DECEDENT FAYE RILEY**

**VERSUS**

**PARAMOUNT HEALTHCARE CONSULTANTS, LLC AND**

**DSRM LAFAYETTE OPCO, L.L.C., D/B/A CORNERSTONE**

**AT THE RANCH**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2022-3408
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**GUY E. BRADBERRY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Sharon Darville Wilson, and Guy E. Bradberry, Judges.

**REVERSED AND REMANDED.**

Mark W. Verret
Allen & Gooch
301 N. Columbia Street, 2nd Floor
Covington, LA 70433
(504) 836-5270
COUNSEL FOR DEFENDANTS/APPELLEES:
    Paramount Healthcare Consultants, LLC
    DSRM Lafayette OPCO, LLC d/b/a Conerstone at the Ranch

Matthew M. Coman
Jordan M. Jeansonne
Garcia & Artigliere
400 Poydras Street, Suite 2045
New Orleans, LA 70130
(504) 354-9751
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Lloyd Riley
    Timothy Riley
    Lloyd Riley obo Decedent Faye Riley
    Timothy Riley obo Decedent Faye Riley

**BRADBERRY, Judge.**

Lloyd Riley and Timothy Riley appeal a trial court judgment granting an exception of prematurity in favor of Paramount Healthcare Consultants, L.L.C. (Paramount) and DSRM Lafayette OPCO, LLC d/b/a Cornerstone at the Ranch (Cornerstone). The Rileys argue that the trial court erred in finding that Paramount was a qualified healthcare provider under the Louisiana Medical Malpractice Act (LMMA), in addition to finding that the claims involved were medical malpractice claims that must be submitted to a medical review panel. For the reasons that follow, we reverse the judgment of the trial court and remand the case for further proceedings.

## FACTS

According to the petition, Faye Riley was a resident of Cornerstone nursing home from November 3, 2021, until April 24, 2022. Paramount was the third-party management company of Cornerstone. On April 24, Ms. Riley was found unresponsive in her room and transferred to a local hospital. It was determined that she suffered from septic shock, dehydration, malnutrition, and bacteremia. Ms. Riley ultimately died at the hospital on April 30.

Her sons, Lloyd and Timothy, filed suit on June 29, 2022, against Paramount and Cornerstone. In response, Paramount and Cornerstone filed an exception of prematurity alleging that they are qualified health care providers pursuant to the LMMA and the allegations should first be presented to a medical review panel.

A hearing on the exception was held on August 7, 2023. The trial court ruled in favor of Paramount and Cornerstone, granting the exception of prematurity. Judgment was signed on August 4, 2023, dismissing the petition without prejudice. The Rileys initially filed a writ with this court, which was converted to an appeal,

since the judgment was a final, appealable judgment. We now address the merits of the appeal.

## EXCEPTION OF PREMATURITY

The Rileys argue that the trial court erred in granting the exception of prematurity and ask that we reverse this judgment. They claim that the tort allegations set forth in their petition for damages are not encompassed by the LMMA.

> The dilatory exception of prematurity provided for in La. C.C.P. art. 926(1) questions whether the cause of action has matured to the point where it is ripe for judicial determination. *DuPuy v. NMC Operating Co., L.L.C.*, 15-1754, p.3 (La. 3/15/16), 187 So. 3d 436, 438. A medical malpractice claim against a qualified health care provider is subject to dismissal on a timely exception of prematurity if such claim has not first been reviewed by a pre-suit medical review panel. La. R.S. 40:1231.8. *See also Dupuy*, 2015-1754, p.4, 187 So.3d at 438. In such situations, an exception of prematurity neither challenges nor attempts to defeat any of the elements of the plaintiff's cause of action but instead asserts that the plaintiff has failed to take some preliminary step necessary to make the controversy ripe for judicial involvement. *Id.* The burden of proving prematurity is on the moving party, in this case [Paramount and Cornerstone], which, in a medical malpractice case, must show that it is entitled to a medical review panel because the allegations fall within the scope of the Act. *Dupuy*, 2015-1754, p.4, 187 So. 3d at 439. Whether a claim sounds in medical malpractice is a question of law reviewed de novo. *Thomas v. Regional Health Sys. of Acadiana*, 2019-0507[, 19-524] (La. 1/29/20), [347 So.3d 595].

*Kelleher v. Univ. Med. Ctr. Mgt. Corp.*, 21-11, pp. 3-4 (La. 10/10/23), 332 So.3d 654, 657.

"The LMMA and its limitations on tort liability for a qualified health care provider apply strictly to claims arising from medical malpractice. . . . All other tort liability on the part of the qualified health care provider is governed by general tort law." *Patterson v. Claiborne Operator Grp., L.L.C.*, 55,264, p. 13 (La.App. 2 Cir. 11/15/23), 374 So.3d 299, 307.

> The Medical Malpractice Act's limitations on the liability of a health care provider are special legislation in derogation of the rights of tort victims. As such, the coverage of the Act should be strictly

2

construed. These limitations apply only in cases of liability for malpractice as defined in the Act. Any other liability of the health care provider to the patient is not subject to these limitations.

*Sewell v. Doctors Hosp.*, 600 So.2d 577, 578 (La.1992).

For the LMMA to apply, two conditions must be met: (1) the party must be a qualified health care provider; and (2) the claim must sound in medical malpractice. *Dupuy v. NMC Operating Co., L.L.C.*, 15-1754 (La. 3/15/16), 187 So.3d 436.

**Health Care Provider**

The Rileys first argue that the trial court erred in finding that Paramount established that it was a health care provider under the LMMA. They specifically argue the trial court erred in admitting, considering, and relying upon Paramount's unauthenticated photocopy of the Patient's Compensation Fund (PCF) certificate.

Health care provider is defined, in pertinent part, by La.R.S. 40:1231.1(10) as: "[A]ny partnership, limited liability partnership, limited liability company, management company, or corporation whose business is conducted principally by health care providers, or an officer, employee, partner, member, shareholder, or agent thereof acting in the course and scope of his employment."

Louisiana Revised Statutes 40:1231.2(A) provides for the qualification of a health care provider under the LMMA as follows:

> To be qualified under the provisions of this Part, a health care provider shall:
>
> (1) Cause to be filed with the board proof of financial responsibility as provided by Subsection E of this Section.
>
> (2) Pay the surcharge assessed by this Part on all health care providers according to R.S. 40:1231.4.
>
> (3) For self-insured health care providers, initial qualification shall be effective upon acceptance of proof of financial responsibility by and payment of the surcharge to the board. Initial qualification shall

3

be effective for all other health care providers at the time the malpractice insurer accepts payment of the surcharge.

To establish its status as a qualified health care provider, the record indicates that Paramount introduced a copy of a certificate from the PCF indicating enrollment from August 22, 2021 to August 22, 2022. An unknown person signed the copy, and the "print date" was listed as June 29, 2023. The Rileys objected to the introduction of this photocopy because it was not certified.

Louisiana Code of Evidence Article 902(b) (emphasis provided) provides that extrinsic evidence of authenticity is not required prior to admission of a Louisiana department, board, or agency document **when certified as being the original by an officer or employee who identifies his official position and who has custody of the document or is authorized to make such certification**. Louisiana Code of Evidence Article 904 provides that a copy of an original public document is deemed authentic when certified as true or correct by the custodian or other person authorized to make that certification. Pursuant to La.Code Evid. art. 901, an exhibit that is not authenticated is not competent evidence. *See also Armand v. Lady of the Sea Gen. Hosp.*, 11-1083 (La.App. 1 Cir. 12/21/11), 80 So.3d 1222, *writ denied*, 12-230 (La. 3/30/12), 85 So.3d 121.

In the present case, Paramount attempted to introduce a copy of a document indicating that it was a qualified health care provider with the PCF. It is not even certified. The signature is illegible and does not even indicate what position this person held at the PCF. In *Armand*, 80 So.3d 1222, the court allowed the introduction of the uncertified certificate because counsel did not object to its introduction. In the present case, counsel for the Rileys did object to the admission of this uncertified copy unlike the plaintiff in *Armand*, 80 So.3d 1222.

4

We find that the trial court erred in considering this uncertified document. Therefore, there is no evidence establishing Paramount is a qualified health care provider under the LMMA, and the trial court erred in granting an exception of prematurity in its favor.

**Intentional Tort**

While our above ruling foregoes the necessity at this point to discuss whether the argument made by the Rileys against Paramount regarding the intentional underfunding of Cornerstone resulting in understaffing fall under the LMMA, there is still an issue concerning fraudulent allegations that was raised concerning both Paramount and Cornerstone. The Rileys argue that there is no coverage under the LMMA for intentional acts, which includes fraud, because the LMMA defines medical malpractice as "any **unintentional** tort." La.R.S. 40:1299.41(A)(emphasis added). Therefore, we will address that issue as it relates to Cornerstone since there is no dispute that Cornerstone is a qualified health care provider under the LMMA.

"Whether a claim sounds in medical malpractice is a question of law reviewed under a *de novo* standard." *Thomas v. Reg'l Health Sys. of Acadiana, LLC*, 29-507, p. 8 (La. 1/29/20), 347 So.3d 595, 601; *Hernandez v. Diversified Healthcare-Abbeville, LLC*, 09-546 (La.App. 3 Cir. 11/4/09), 24 So.3d 284, *writ denied*, 09-2629 (La. 2/12/10), 27 So.3d 849.

In *Coleman v. Deno*, 01-1517 (La. 1/25/02), 813 So.2d 303, the supreme court identified six factors to be utilized in determining whether an action sounds in medical malpractice: (1) whether the specific wrong is treatment related or caused by a failure of professional skill; (2) whether the specific wrong will require expert medical evidence to determine if the appropriate standard of care was breached; (3) whether the pertinent act or omission involved assessment of the patient's condition;

5

(4) whether an incident occurred in the context of a physician-patient relationship or was withing the scope of activities that a hospital is licensed to perform; (5) whether the injury would have occurred if the patient did not seek treatment; (6) whether the alleged tort was intentional.

Our analysis of the present case focuses on the sixth Coleman factor, whether there is an allegation of an intentional tort. The LMMA excludes intentional torts from its definition of malpractice, which is generally limited to unintentional torts. Intentional torts fall outside the scope of the LMMA, so they do not require the usual medical review panel assessment that is mandated by malpractice claims. Intentional torts require that the provider either consciously desires the result of their actions or knows that the result is substantially certain to follow from their conduct regardless of desire. *Hebert v. Louisiana Med. Mut. Ins. Co.*, 22-316 (La.App. 3 Cir. 10/26/22), 353 So.3d 846. The LMMA is designed to address negligence or unintended failures in the delivery of health care services, not deliberate harmful actions.

The Rileys claim that Cornerstone committed fraud when it made knowing, intentional misrepresentations at the time she was admitted that violated her rights under La.R.S. 40:2010.8(A)(7) of the Nursing Home Residents Bill of Rights (NHRBR). They claim that Cornerstone assured Ms. Riley that there would be sufficient nursing personnel meeting her needs as mandated by federal and state laws and it knew these representations were falsely made because it would not be able to meet her needs since it was understaffed. The Rileys argue that these deliberate fraudulent actions resulted in injury and economic damages pursuant to La.Civ. Code arts. 1953 and 1958, in addition to attorney fees.

Enactment of the NHRBR was not intended to remove medical malpractice claims against qualified health care providers from the LMMA, but was intended to provide nursing home residents with important rights to preserve their dignity and personal integrity. *Richard v. Louisiana Extended Care Ctrs., Inc.* 02-978 (La. 1/14/03), 835 So.2d 460.

Louisiana Revised Statutes 40:2010.9 provides for the enforcement of the NHRBR.

> Causes of action for actual monetary damages based upon violations of the NHRBR were statutorily permitted prior to 2003. However, legislative amendments eliminated claims for monetary damages arising from violation of the NHRBR. Private actions for NHRBR violations are limited to claims by nursing home residents for injunctive relief plus attorney's fees and costs.

*Cole v. St. Joseph of Harahan, L.L.C.*, 24-148, p. 6 (La.App. 5 Cir. 8/7/24), ___ So.3d ___, ___.

The court in *Cambre v. Riverlands Home Group, L.L.C.*, 24-218, p. 7 (La.App. 5 Cir. 8/7/24), ___ So.3d ___, ___, also noted that "the NHRBR no longer allows for the recovery of damages when that duty - *i.e.*, to provide certain information to residents regarding its services and to assure that residents receive such services – is breached; the exclusive remedy is injunctive relief." However, the court did recognize that La.Civ.Code art. 2315 could provide a basis for a cause of action for fraud. The court stated that plaintiffs must allege that actual harm was suffered which resulted in actual damages.

In *Randall v. Concordia Nursing Home*, 07-101 (La.App. 3 Cir. 8/22/07), 965 So.2d 559, *writ denied*, 07-2153 (La. 1/7/08), 973 So.2d 726, this court noted that La.R.S. 40:2010.9(B) states that other legal and administrative remedies are still available to the resident. Although decided before the 2003 amendment to La.R.S.

40:2010.9, this court recognized that a resident's intentional tort claim under the NHRBR did not have to be submitted to a medical review panel. *Richard ex rel. Deville v. Louisiana Extended Care Ctrs., Inc.*, 01-1492 (La.App. 3 Cir. 3/6/02), 809 So.2d 1248, *affirmed in part on other grounds*, 02-978 (La. 1/14/03), 835 So.2d 460 (In footnote 2, the supreme court noted that the defendant conceded that the plaintiff's intentional tort claim was not subject to the provisions of the LMMA).

Fraud is defined by La.Civ.Code art. 1953 (emphasis provided) as "a misrepresentation or a suppression of the truth made **with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other**. Fraud may also result from silence or inaction." "Mere silence or inaction without fraudulent intent does not constitute fraud. Fraudulent intent, or the intent to deceive, is a necessary and inherent element of fraud. Fraud cannot be predicated upon mistake or negligence, no matter how gross." *Shekinah Glory Ministries v. One Way Deliverance Ministry*, 22-1170, p. 8 (La.App. 1 Cir. 4/20/23), 366 So.3d 1256, 1261.

Fraud is established by proving three elements: "(1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract." *Shelton v. Standard/700 Assocs.*, 01-587, p. 5 (La 10/16/01), 798 So.2d 60, 64; *Robinson-Carter v. St. John the Baptist Parish Sch. Bd.*, 23-397 (La.App. 5 Cir. 4/3/24), 386 So.3d 1163. "Specific intent to deceive is a necessary element of fraud, and fraud cannot be based on mistake or negligence, regardless how great." *Lomont v. Bennett*, 14-2483, p. 19 (La. 6/30/15), 172 So.3d 620, 634, *cert. denied*, 577 U.S. 1139, 136 U.S. 1167 (2016).

"To sufficiently plead an intentional tort in the context of medical malpractice, the petition must contain specific facts sufficient to establish the medical provider consciously desired the physical result of his acts or knew the result was substantially certain to follow from [its] conduct." *Doe v. Banks*, 23-914, p. 7 (La.App. 1 Cir. 3/13/24), 385 So.3d 706, 710-11; *Hebert v. Louisiana Med. Mut. Ins. Co.*, 22-316 (La.App. 3 Cir. 10/26/22), 353 So.3d 846. "[S]omething more than a conclusory allegation of intentional conduct is required." *Self v. Willis-Knighton Med. Ctr.*, 55,130, p. 11 (La.App. 2 Cir. 8/9/23), 369 So.3d 455, 461.

In their petition alleging fraud, the Rileys claim that Cornerstone informed Ms. Riley in writing at the time of her admission that it would provide adequate and appropriate health care and protective and support services, which Cornerstone knew it could not provide. The Rileys claim that these intentional misrepresentations resulted in bodily injuries and death by the following actions or inactions:

a) failing to have sufficient qualified personnel to properly operate the nursing facility to assure the health, safety, proper care and treatment of Ms. Riley as required by La. Admin. Code. [sic] tit. 48 § I-9757, *et seq.* and 42 C.F.R. § 483.35, *et seq.;*
b) failing to properly assess, re-assess [a] care plan for Ms. Riley's self-care deficits, risk of falls, risks of developing pressure ulcers and infections, having actually developed pressure ulcers to her body, and her risk of dehydration and malnutrition, as required by La. Admin. Code. [sic] tit. 48 § § I-9763, *et seq.* and I-9825(A) and 42 C.F.R. § 483.25, *et seq.*.;
c) failing to have sufficient nursing staff to provide nursing and related services that met the needs of Ms. Riley as required by La. Admin. Code. [sic] tit. 48 § I-9821(A) and 42 C.F.R. § 483.35, *et seq.*;
d) failing to provide a sufficient number of nursing service personnel consisting of registered nurses, licensed practical nurses, medication attendants certified, and certified nurse aides to provide nursing care to Ms. Riley in accordance with her care plans 24 hours per day as required by La.Admin. Code. [sic] tit. 48 § I-9823(A), *et seq.* and 42 C.F.R. § § 483.25, *et seq.* and 483.35, *et seq.*;
e) failing to ensure Ms. Riley received personal attention and nursing care and services in accordance with her condition and consistent with current acceptable standards of nursing practice as required by

La. Admin. Code. [sic] tit. § I-9825(A), and 42 C.F.R. § § 483.25, *et seq.* and 483.35, *et seq.*;

f) failing to provide nursing care and services to Ms. Riley[] as needed to prevent her from suffering preventable falls, developing avoidable pressure ulcers and suffering from dehydration, malnutrition and sepsis, as required by La. Admin. Code. [sic] tit. 48 § I-9825, *et seq.* and 42 C.F.R. §483.25, *et seq.*; and

g) failing to promptly notify Ms. Riley's legal representative, sponsor or designated contact when there was a significant change in Ms. Riley's physical status as required by La. Admin. Code. [sic] tit. 48 § I-9825(H).

This court in *Hernandez*, 24 So.3d 284, discussed an adequate staffing issue at a nursing home. In considering the factors in *Coleman*, 813 So.2d 303, this court noted that:

> There can be no way to assess the fault of the nursing home without reference to Alvin's extensive medical and pharmacological needs and the care and treatment that was rendered to him by the staff. The level of supervision and monitoring required by a patient necessarily requires an assessment of his medical condition and capabilities.

*Hernandez*, 24 So.3d at 287. However, the court also observed "**there are no allegations that the conduct complained of was intentional**. *Id*. at 289 (emphasis provided).

The Rileys have made specific claims of intentional misrepresentations by the nursing home that it had the staff to care for her specific needs when it knew it could not provide the necessary care that her circumstances required. They have alleged that these misrepresentations resulted in injuries and death to Ms. Riley because the nursing home knowingly could not provide the appropriate health care, protective, and support services. We find that these allegations are sufficient to support a claim that an intentional tort occurred, and the trial court erred in granting the exception of prematurity in favor of Cornerstone.

For the reasons set forth in this opinion, we find that the trial court erred in admitting an uncertified copy of the PCF certificate in favor of Paramount

Healthcare, and the exception of prematurity in its favor is hereby reversed. We also find that the trial court erred in finding that the Rileys did not sufficiently plead the allegation of intentional fraud by Cornerstone and reverse the grant of prematurity in its favor. We remand this case to the trial court for further proceedings consistent with this opinion. All costs of this appeal are assessed to Paramount Healthcare Consultants, L.L.C. and DSRM Lafayette OPCO, LLC d/b/a Cornerstone at the Ranch.

**REVERSED AND REMANDED.**