Judgment rendered April 9, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,040-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

JOAN MARIE DOUGLAS                    Plaintiff-Appellant

versus

PATHWAY MANAGEMENT OF                 Defendants-Appellees
LOUISIANA, LLC AND
COMMUNITY CARE CENTER
OF SHREVEPORT, SOUTH, LLC
D/B/A HERITAGE MANOR
SOUTH

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 622,676

Honorable Christopher T. Victory, Judge

* * * * *

FLANAGAN PARTNERS, LLP                Counsel for
By: Thomas More Flanagan              Plaintiff-Appellant

GARCIA & ARTIGLIERE
By: Matthew McKay Coman
    Jordan M. Jeansonne
    Stephen M. Garcia

STONE, PIGMAN, WALTHER,                 Counsel for
WITTMANN, L.L.C.                        Defendants-Appellees
By: C. Lawrence Orlansky
    Nicholas J. Wehlen
    Kelly S. Smith

LUNN IRION LAW FIRM, LLC
By: Ronald Everett Raney
    Patrick Willer Woolbert


* * * * *


Before ROBINSON, HUNTER, and MARCOTTE, JJ.

**HUNTER, J.**

Plaintiff, Joan Marie Douglas, appeals a district court judgment which granted, in part, a motion for partial summary judgment filed by defendants, Pathway Management of Louisiana, LLC and Community Care Center of Shreveport, South, D/B/A Heritage Manor South. For the following reasons, we deny the exception of no cause of action filed by Pathway Management of Louisiana, LLC, and we affirm the district court's ruling.

## FACTS

Plaintiff, Joan Marie Douglas, is a former resident of Heritage Manor South, a nursing home facility located in Shreveport, Louisiana. On October 7, 2019, plaintiff allegedly suffered an apparent seizure and fell from her bed. Plaintiff alleged the nursing home staff failed to immediately respond to her calls for assistance and failed to immediately transfer her to an emergency room for examination and treatment. Plaintiff also alleged she was not transported to the hospital until October 11, 2019, and it was discovered she had suffered a fractured hip which would require surgery. After plaintiff was discharged from the hospital and returned to Heritage, she allegedly fell and fractured her finger while attempting to sit in her unlocked wheelchair.

On March 2, 2020, plaintiff filed a lawsuit against defendant, Pathway Management of Louisiana, LLC ("Pathway"), and Community Care Center of Shreveport, South, D/B/A Heritage Manor South ("Heritage"). Pathway is a management company which operates multiple nursing homes; pursuant

to a contract, Pathway provided third-party management and administrative services to Heritage.[1]

In the lawsuit, plaintiff alleged, *inter alia*, Pathway caused and/or contributed to her injuries due to "financial and control policies and practices forced upon [Heritage]." More specifically, plaintiff alleged as follows: (1) Pathway was responsible for the management of the facility, and it created and implemented policies and procedures aimed to increase earnings, as opposed to providing minimum care to the residents; (2) Pathway maintained staffing below the national average and left Heritage with insufficient funds to meet the needs of the residents; (3) Pathway engaged in a scheme to limit costs and maximize profits, which resulted in plaintiff receiving "substandard treatment in exchange for such compensation"; (4) Pathway breached its duty to provide plaintiff with necessary custodial care; and (5) Pathway made critical operational decisions which impacted Heritage's revenue and staffing.

Subsequently, plaintiff filed amended petitions, asserting additional claims against Pathway. Plaintiff alleged as follows: (1) Pathway, as the contractual manager of Heritage, had operational control of the facility's resources and owed a duty to provide plaintiff with necessary care and sufficient, competent, and skilled staff; (2) Pathway's failure to provide sufficient qualified personnel caused her injuries; (3) Pathway failed to meet the requirements to administer the facility effectively and efficiently; (4) Pathway's actions "constitute administrative negligence (*i.e.*, ordinary

_____

[1]In the lawsuit, plaintiff alleged various claims against Heritage and its employees, including medical malpractice, general negligence, and "administrative" negligence. Plaintiff requested a medical review panel be convened regarding Heritage's alleged acts of medical malpractice.

negligence)"; (5) Pathway's "pursuit of profit" was a factor in underfunding the facility, which led to the facility violating state and federal laws, rules, and regulations, which, in turn, led to plaintiff's injuries; and (6) Pathway intentionally maintained inadequate funding which caused understaffing. In her fourth amended petition, plaintiff added claims of medical malpractice against Heritage, and restated her claims against Pathway with regard to insufficient funding, understaffing, and other administrative acts/omissions. Plaintiff also added allegations of "intentional fraud" against Pathway and Heritage.

On September 18, 2023, defendants filed a motion for partial summary judgment arguing plaintiff's claims of administrative negligence with regard to inadequate staffing do not exist in Louisiana law. In the alternative, defendants argued the understaffing fell within the purview of the Louisiana Medical Malpractice Act ("LMMA"). Defendants also argued Heritage was not understaffed during the time plaintiff suffered her injuries because the staffing met the appropriate hours of care per patient per day as set forth in the Louisiana Administrative Code.

In response, plaintiff argued defendants should not be permitted to assert the protections set forth in the LMMA because the claims arose from "administrative negligence," rather than medical malpractice. According to plaintiff, her claims administrative negligence claims against Pathway are wholly separate from her medical malpractice claims against Heritage.

Following a hearing, the district court granted, in part, defendants' motion for partial summary judgment, finding plaintiff's negligence claims against Pathway sound in medical malpractice.[2] The court stated:

> [T]he Court finds that the Plaintiff's argument that the Defendants cannot avail themselves of any protections under the LMMA has no merit.
>
> ***
>
> The ultimate issue regarding the first point of contention at the Motion for Partial Summary Judgment hearing before this Court then is whether the Plaintiff's administrative negligence claims against Pathway sound in general tort or in medical malpractice.
>
> Under the *Coleman* [*v. Deno*, 01-1517 (La. 1/25/02), 813 So. 2d 303] factors, it is clear the Plaintiff's administrative negligence and staffing claims constitute "medical malpractice." The administrative negligence claim of understaffing against Pathway, as alleged in the Plaintiff's petition, was caused by a dereliction of professional skill. The wrongs asserted against Pathway will require expert medical evidence to properly determine whether the appropriate standard of care was breached. Pathway's alleged omissions in Plaintiff's complaint involved the assessment of her condition as a fall risk. Finally, the Plaintiff made its allegations of understaffing against Pathway as omissions, meaning they were not intentional.
>
> Additionally, Louisiana courts on several occasions have held that staffing claims brought against nursing homes fell under the LMMA. *Campbell v. Nexion Health at Claiborne, Inc.*, 49,150 (La. App. 2 Cir. 10/1/14), 149 So. 3d 436, 442-43; *Hernandez v. Diversified Healthcare-Abbeville, LLC*, 2009-546 (La. App. 3 Cir. 11/4/09), 24 So. 3d 284, 286. Therefore, the administrative negligence claim asserted against Pathway constitutes "medical malpractice" under the LMMA.
>
> Plaintiff appeals.

---

[2] The district court denied the portion of the motion for partial summary judgment with regard to "Defendants' argument that Heritage Manor South was not understaffed during the time that Plaintiff resided there[.]" Defendants did not appeal this ruling; therefore, the trial court's ruling on this issue will not be addressed.

**DISCUSSION**

Plaintiff contends the district court erred in granting, in part, the motion for partial summary judgment. Plaintiff argues the district court's ruling allows Pathway to be protected by the LMMA, when a genuine issue of material fact exists as to whether Pathway is a "health care provider." She also asserts she was a nursing home resident at Heritage, she has never been a patient at Pathway, and the LMMA and its limitations on tort liability only apply to qualified health care providers for claims "arising from medical malpractice" to a "patient." Plaintiff further argues the district court erred in applying the *Coleman* factors to this case because Pathway failed to prove plaintiff was its patient under the LMMA, and Pathway never argued the *Coleman* factors applied in this case.

Appellate review of the granting of a motion for summary judgment is de novo, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Billeaudeau v. Opelousas Gen. Hosp. Auth.*, 16-0846 (La. 10/19/16), 218 So. 3d 513; *Bonin v. Westport Ins. Corp.*, 05-0886 (La. 5/17/06), 930 So. 2d 906. A motion for summary judgment shall be granted if "the motion, memorandum, and supporting documents show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). When summary judgment is granted in the context of statutory interpretation, there are no material issues of fact in dispute, and the sole issue before the reviewing court is a question of law as to the correct interpretation of the statute at issue. *Billeaudeau*, *supra*; *Vizzi v. Lafayette City-Parish Consol. Gov't*, 11-2648 (La. 7/2/12), 93 So. 3d 1260.

5

The mover bears the burden of proof on summary judgment. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

Further, whether a claim sounds in medical malpractice is a question of law reviewed under a de novo standard. *Thomas v. Reg'l Health Sys. of Acadiana, LLC*, 19-507, 19-524 (La. 1/29/20), 347 So. 3d 595.

Under the general rules of statutory construction, the interpretation of any statutory provision begins with the language of the statute itself. *Billeaudeau, supra*; *McGlothlin v. Christus St. Patrick Hosp.*, 10-2775 (La. 7/1/11), 65 So. 3d 1218. When the provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used. La. C.C. art. 9; La. R.S. 1:4; *Billeaudeau, supra*; *Milbert v. Answering Bureau, Inc.*, 13-0022 (La. 6/28/13), 120 So. 3d 678. Unequivocal provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning. La. C.C. art. 11; La. R.S. 1:3.

The LMMA and its limitations on tort liability for a qualified health care provider apply strictly to claims "arising from medical malpractice." *Billeaudeau, supra*; *Coleman*, *supra*. This is so because the LMMA's limitations on the liability of health care providers are special legislation in derogation of the rights of tort victims, and as such, the coverage of the act should be strictly construed. *Billeaudeau, supra*; *Sewell v. Doctors Hosp.*, 600 So. 2d 577 (La. 1992). "The primary limiting provisions available to private health care providers are the maximum amount of damages and the mandatory pre-suit review by a medical review panel[.]" *Spradlin v. Acadia-St. Landry Medical Found.*, 98-1977 (La. 2/29/00), 758 So. 2d 116, 120. These limitations apply only in cases of liability for malpractice as defined in the LMMA, and any other liability of the health care provider is governed by general tort law. *Billeaudeau, supra*; *Williamson v. Hospital Serv. Dist. No. 1 of Jefferson*, 04-0451 (La. 12/1/04), 888 So. 2d 782.

In order for plaintiff's claims to be considered a medical malpractice action under the LMMA, the negligence or contract claim must be predicated on "health care or professional services" rendered by a health care provider to a patient. "Health care" is defined by the LMMA as follows:

> [A]ny act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement, or during or relating to or in connection with the procurement of human blood or blood components.

La. R.S. 40:1231.1(A)(9). The LMMA defines "health care provider" as follows:

7

[A] person, partnership, limited liability partnership, limited liability company, corporation, facility, or institution licensed or certified by this state to provide health care or professional services as a physician, hospital, nursing home, community blood center, tissue bank, dentist, a licensed dietician or licensed nutritionist employed by, referred by, or performing work under contract for, a health care provider or other person already covered by this Part[.]

La. R.S. 40:1231.1(A)(10). Further, the LMMA defines "malpractice" as:

[A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.

La. R.S. 40:1231.1(A)(13). Additionally, a "patient" is defined as a natural person, including a nursing home resident who receives or should have received health care from a licensed health care provider, under contract, expressed or implied. La. R.S. 40:1231.1(A)(15).

To be qualified as a health care provider under the LMMA, the provider must (1) cause to be filed with the board proof of financial responsibility; and (2) pay the surcharge assessed on all healthcare providers in accordance with the LMMA. The health care provider's qualification becomes effective when proof of financial responsibility has been filed and the assessed surcharge is paid by the provider. La. R.S. 40:1231.2(A).

In the instant case, plaintiff concedes Pathway offered into evidence a copy of a certificate of enrollment into the Patient Compensation Fund. However, plaintiff argues the certificate was not authenticated, and

8

therefore, Pathway's status as a qualified health care provider remains in dispute.

In *Roark v. Liberty Healthcare Sys., LLC*, 44,913 (La. App. 2 Cir. 12/9/09), 26 So. 3d 968, 974-75, *writ denied*, 10-0390 (La. 4/23/10), 34 So. 3d 265, the plaintiff argued the certificates of enrollment offered into evidence were not authenticated. This Court stated:

> Additionally, although the MMA does not specifically address the necessary information to be provided by the "certificate of enrollment," we find that the two certificates reveal the criteria to establish a *prima facie* case for the applicability of the MMA to this claim against Liberty Healthcare. Both certificates list Liberty Healthcare as an enrollee for the year in which the alleged malpractice occurred and the year in which the claim was made. They show Liberty Healthcare's financial responsibility by listing the insurance that it carried in both years with Evanston Insurance Company. Both certificates state that surcharges for excess coverage were paid. Accordingly, the certificates of enrollment adequately established the *prima facie* case that Liberty Healthcare is a qualified health care provider under the MMA regarding plaintiffs' claim. Since we find that plaintiffs produced no evidence disputing Liberty Healthcare's status, we affirm the trial court's ruling.

We have carefully reviewed the evidence introduced on summary judgment, and we conclude Pathway has satisfied its burden of proving it was certified as a qualified healthcare provider on the date(s) of the alleged incidents. The record contains a copy of a signed certificate of enrollment issued to Pathway by the Patient Compensation Fund, for the enrollment period of June 7, 2019-June 7, 2020, the time period during which the alleged malpractice occurred. The document also demonstrates Pathway's financial responsibility by showing it insured by National Fire & Marine Insurance Company, and the certificates state the surcharges for excess coverage was paid. Moreover, plaintiff did not raise the issue of Pathway's status as a qualified health care provider in the district court and did not

9

object to the introduction of the certificate into evidence in the district court. At summary judgment, the court shall consider only those documents filed or referenced in support of or in opposition to the motion. An objection to a document shall be made in a timely filed opposition or reply. La. C.C.P. art. 966(D)(2).

Additionally, the general definition of "malpractice" focuses on conduct. *Billeaudeau*, *supra*. To assist courts in determining whether certain conduct by a qualified health care provider constitutes "malpractice" as defined under the LMMA, the Louisiana Supreme Court has set forth the following six factors:

> (1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill,
>
> (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached,
>
> (3) whether the pertinent act or omission involved assessment of the patient's condition,
>
> (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
>
> (5) whether the injury would have occurred if the patient had not sought treatment, and
>
> (6) whether the tort alleged was intentional.

*Billeaudeau*, *supra*; *Blevins v. Hamilton Med. Ctr., Inc.*, 07-127 (La. 6/29/07), 959 So. 2d 440; *Coleman*, *supra.* Thus, we find the district court did not err in analyzing the record under the *Coleman* factors to determine whether plaintiff's allegations sound in medical malpractice or general negligence.

In *Billeaudeau*, *supra*, the plaintiffs filed a lawsuit alleging, *inter alia*, their daughter's injuries were caused by the hospital's failure to properly credential an emergency room physician, who was employed as an independent contractor. The plaintiffs filed a motion for summary judgment seeking a ruling on whether negligent credentialing is covered under the LMMA. The Louisiana Supreme Court granted certiorari and concluded, "[U]nder the *Coleman* test, plaintiffs' negligent credentialing claim is weighted in favor of our finding the claim sounds in general negligence and falls outside the purview of the LMMA and its limitations on liability." *Id.* at 527.

In *Blevins*, *supra*, the plaintiff filed a lawsuit alleging he was injured when a hospital bed moved and caused him to lose his balance and fall. The plaintiff filed a lawsuit in district court, and contemporaneously requested a medical review panel based upon the same allegations set forth in his petition. The district court found the allegations pertaining to the hospital bed sounded in general negligence, and court of appeal reversed. The Louisiana Supreme Court granted certiorari, and analyzed the allegations pursuant to the *Coleman* factors.

With regard to administrative negligence/understaffing, in her original petition, plaintiff alleged as follows:

\*\*\*

16.
[Pathway] maintained staffing at [Heritage] per resident per day for licensed nurses *below* the national average. Specifically, [Heritage] provided residents with 1 hour and 26 minutes per day in licensed nurse staff hours, which was below the national average of 1 hour and 34 minutes. In particular, [Heritage] provided residents with 22 minutes per resident per day in registered nurse hours, which was far below the national average of 41 minutes per resident per day.

11

21.

[D]EFENDANTS owed a duty to [plaintiff] to, and represented it would, *** provide custodial and professional services to [plaintiff] with sufficient budget and sufficient staffing to meet the needs of [plaintiff]. The DEFENDANTS failed to meet this duty to [plaintiff] hereby causing her injury as detailed herein.

22.

[D]EFENDANTS owed a duty to, and represented it would, provide services to [plaintiff] *** to have sufficient number of personnel on duty at [Heritage] on a 24-hour basis to provide appropriate custodial and professional services to [plaintiff] in accordance with [plaintiff's] resident care plans. The DEFENDANTS did not provide these legally required services. The DEFENDANTS failed to meet this duty to [plaintiff] thereby causing her injury.

23.

[T]he injuries suffered by [plaintiff] *** were the result of the DEFENDANTS' practice of reducing costs at the expense of their residents[.] *** Integral to this plan was the practice and pattern of staffing [Heritage] with an insufficient number of service personnel. This "understaffing" was designed as a mechanism to reduce labor costs, which predictably and foreseeably resulted in the neglect of the residents[.]

24.

[PATHWAY] enacted, established and implemented the financial plan and scheme which led to [Heritage] being understaffed by way of imposition of financial limitations on [Heritage]. ***

In the third amending petition, plaintiff alleged as follows:

***

19.

[PATHWAY], as the contractual "manager" of the facility, had operational control over the facility's resources, funding and staffing levels and therefore owed certain duties to its resident, Petitioner, to include ensuring the facility had sufficient resources to provide her with necessary custodial care, sufficient numbers of nursing staff with the appropriate competences and skill sets to provide nursing and related services to Petitioner in accordance with her care plan 24 hours per day[.]

20.

[PATHWAY]'s actions, omissions and failures detailed herein, the facility failed to have sufficient qualified personnel to properly operate the nursing facility to assure the health, safety, proper care and treatment of [plaintiff].

21.

In [PATHWAY]'s actions, omissions and failures detailed herein, the facility failed to meet the statutory requirements which mandated that it have sufficient nursing staff to provide nursing and related services that met the needs of Petitioner[.]

22.

In [PATHWAY]'s actions, omissions and failures detailed herein, the facility failed to meet the statutory requirements which mandated that it provide sufficient number of nursing service personnel consisting of registered nurses, licensed practical nurses, medication attendants certified, and certified nurse aides to provide nursing care to Petitioner in accordance with her care plans 24 hours per day[.]

23.

In [PATHWAY]'s actions *** the facility also failed to meet the statutory requirements which required that Petitioner received personal attention and nursing care and services in accordance with her condition and consistent with current acceptable standards of nursing practice[.]

***

Plaintiff further alleged Pathway's actions and omissions constituted "administrative negligence, (*i.e.*, ordinary negligence)," and therefore, were not subject to the LMMA. In her fourth amended petition, plaintiff set forth additional allegations with regard to Pathway's control over Heritage's financial resources which led to inadequate "nursing staff with the appropriate competencies and skill sets to provide nursing and related services" according to plaintiff's care plan.

Our review of the specific allegations set forth in plaintiff's petitions reveal they contain more than claims of "administrative" issues, such as the incidents which occurred in the cases cited by plaintiff. For example, in *LaCoste v. Pendleton Methodist Hosp., LLC*, 07-0008 (La. 9/5/07), 966 So. 2d 519, plaintiff alleged administrative negligence caused by the facility's failure to maintain equipment, such as life-support systems. In *Blevins*, *supra*, the administrative negligence alleged was due to the failure to maintain functional beds. In *Scio v. University Med. Mgmt. Corp.*, 19-1319

(La. 10/21/19), 280 So. 3d 1135, plaintiff alleged defendant failed to implement crucial policies. In *Billeaudeau*, *supra*, plaintiff alleged defendant failed to ensure a physician had adequate credentials.

In the instant case, using the factors set forth in *Coleman*, *supra*, the administrative claims of understaffing set forth in plaintiff's petition tend to show the degree of care which was, or should have been, provided to plaintiff, and the appropriate standard of care are questions which require expert medical knowledge. The petition indicates that plaintiff became a resident of Heritage because she required assistance with various daily activities, and the level and degree of assistance was a matter for Heritage to determine per its medical expertise. Likewise, the opinion of experts will be required to determine if Pathway breached the standard of care by, *inter alia*, failing to ensure Heritage had sufficient resources to maintain adequate staffing to meet plaintiff's needs in accordance with her plan of care. Consequently, after reviewing the totality of the allegations of plaintiff's petition, we conclude the trial court did not err in concluding the administrative claims of understaffing sound in medical malpractice, as they will require expert medical evidence.

Plaintiff further argues Pathway failed to satisfy its burden under La. C.C.P. art. 966 with supporting documents to establish there are no genuine issues of material fact, and it is entitled to summary judgment as a matter of law. According to plaintiff, Pathway is only entitled to summary judgment if "the motion, memorandum, and supporting documents" show there are no genuine issues of material fact. La. C.C.P. art. 966(A)(3). Plaintiff maintains La. C.C.P. art. 966(A)(4)(b) now permits parties to reference

14

documents previously filed into the record, and Pathway did not file or reference plaintiff's petition.  Therefore, plaintiff argues the district court erred in finding Pathway's supporting documents were sufficient to resolve all material issues with regard to the applicability of the LMMA.

La. C.C.P. art. 966(A)(4) provides:

(a) The only documents that may be filed or referenced in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, certified copies of public documents or public records, certified copies of insurance policies, authentic acts, private acts duly acknowledged, promissory notes and assignments thereof, written stipulations, and admissions. The court may permit documents to be filed in any electronically stored format authorized by court rules or approved by the clerk of the court.

(b) Any document listed in Subsubparagraph (a) of this Subparagraph previously filed into the record of the cause may be specifically referenced and considered in support of or in opposition to a motion for summary judgment by listing with the motion or opposition the document by title and date of filing. The party shall concurrently with the filing of the motion or opposition furnish to the court and the opposing party a copy of the entire document with the pertinent part designated and the filing information.

In *Ricketson v. McKenzie*, 23-0314 (La. App. 1 Cir. 10/4/23), 380 So. 3d 1, the Court considered the amendment to La. C.C.P. art. 966 and stated:

[La. C.C.P. art] 966 was recently amended by 2023 La. Acts. No. 317, § 1, effective August 1, 2023. Significantly, this amendment expanded the exclusive list of supporting documents that are considered competent evidence in support of or in opposition to a motion for summary judgment. See La. C.C.P. art. 966(A)(4)(a). Additionally, this amendment changed the duties of parties in supporting and opposing motions for summary judgment. Particularly, prior to the amendment, parties were required to file their supporting documents with the motion and memorandum in order for such supporting documents to be considered[.] ***However, La. C.C.P. art. 966, as amended, now permits such supporting documents to be "filed or referenced" and mandates that a trial court shall consider only those documents "filed or referenced" in support*

15

> *of or in opposition to a motion for summary judgment*. <u>See</u> La.
> C.C.P. art. 966(A)(4)(a) and (D)(2).
>
> Furthermore, as amended, La. C.C.P. art. 966(A)(4)(b), now
> provides that any documents listed in subparagraph (a) that
> have been previously filed into the record of the cause may be
> specifically referenced and considered in support of or in
> opposition to a motion for summary judgment by listing with
> the motion or opposition the document by title and date of
> filing. Additionally, the party shall concurrently with the filing
> of the motion or opposition furnish to the court and the
> opposing party a copy of the entire document with the pertinent
> part designated and the filing information. La. C.C.P. art.
> 966(A)(4)(b).

*Id*., at 7 (emphasis added).

We agree. We find Pathway was not required to file the petition for damages and amended petitions along with its motion for summary judgment. The petition, and the amendments thereto, had been previously filed into the record. Our review of Pathway's motion and the accompanying memorandum in support of the motion reveals that throughout the motion, Pathway referenced the allegations set forth in plaintiff's "various petitions and allegations." This assignment lacks merit.

Plaintiff further contends Pathway waived its ability to assert any protection under the LMMA because it failed to file a dilatory exception of prematurity in response to plaintiff's petition. According to plaintiff, a defendant seeking to avail itself of the protections provided by the LMMA must file a dilatory exception of prematurity. To support her argument, plaintiff cites *Spradlin*, *supra*, in which the Louisiana Supreme Court stated:

> The dilatory exception of prematurity questions whether the
> cause of action has matured to the point where it is ripe for
> judicial determination. This exception is the proper procedural
> mechanism for a qualified health care provider to invoke when
> a medical malpractice plaintiff has failed to submit the claim for
> decision by a medical review panel before filing suit against the
> provider. In this type of case, the exception of prematurity

neither challenges nor attempts to defeat any of the elements of the plaintiff's cause of action. Rather, the defendant asserts that the plaintiff has failed to take some preliminary step necessary to make the controversy ripe for judicial involvement. Thus a *malpractice* claim against a private qualified health care provider is subject to dismissal on a timely filed exception of prematurity if such claim has not first been screened by a pre-suit medical review panel. This pre-suit screening process acts to delay, not to defeat, a tort suit for malpractice.

*Id.*, at 119.

The issue of whether a claim is within the purview of the LMMA ordinarily presents on an exception of prematurity. However, contrary to plaintiff's contention, there was no statutory or jurisprudential mandate which provides that a defendant can only avail itself of the protection of the LMMA by first filing an exception of prematurity. Further, as stated above, in *Billeaudeau*, *supra*, the plaintiffs filed a motion for summary judgment seeking a ruling on the issue of whether the claims sounded in medical malpractice or general negligence. The Court stated:

Generally, this issue [whether a claim sounds in medical malpractice] would present on an exception of prematurity, and a court in its trial of the exception would analyze the allegations of the petition under *Coleman* to determine whether they sound in medical malpractice and, thus, must proceed in accordance with the LMMA, or sound in general negligence and, thus, should proceed under general tort law. Although this matter is on summary judgment, it still logically follows a court must analyze plaintiffs' claims under the *Coleman* factors, as the lower courts did herein, to determine whether they sound in medical malpractice or general negligence.

*Id.*, at 521 (internal citation omitted). Accordingly, this assignment lacks merit.

After the briefing deadlines passed and the matter had been docketed for oral argument, Pathway filed a peremptory exception of no cause of action arguing plaintiff failed "to articulate any relationship that could give

17

rise to a duty that Pathway owed Plaintiff." According to Pathway, plaintiff's petition did not set forth any allegations that Pathway owed any duty to plaintiff, there was no contractual relationship between it and plaintiff, and plaintiff has consistently maintained she was never a "patient" of Pathway.

The peremptory exception of no cause of action is designed to test the legal sufficiency of a petition by determining whether a party is afforded a remedy in law based on the facts alleged in the pleading. *Young v. Horseshoe Ent., Ltd. P'ship*, 55,749 (La. App. 2 Cir. 9/4/24), 399 So. 3d 768, *writ denied*, 24-01221 (La. 12/27/24), 397 So. 3d 1221; *Fluid Disposal Specialties, Inc. v. UniFirst Corp.*, 53,014 (La. App. 2 Cir. 9/25/19), 316 So. 3d 1222, *aff'd on reh'g*, 53,014 (La. App. 2 Cir. 6/3/20), 316 So. 3d 1252. All well-pleaded allegations of fact are accepted as true and correct, and all doubts are resolved in favor of the sufficiency of the petition so as to afford litigants their day in court. *Id.* The burden of demonstrating that a petition fails to state a cause of action is upon the mover. *Id.* The sufficiency of a petition, subject to an exception of no cause of action is a question of law, and a de novo standard is applied to the review of legal questions; this court renders a judgment based on the record without deference to the legal conclusions of the lower courts. *Id.*

An exception of no cause of action should be granted only when it appears beyond doubt the plaintiff can prove no set of facts in support of any claim which would entitle her to relief. If the petition states a cause of action on any ground or portion of the demand, the exception should generally be overruled. Every reasonable interpretation must be accorded

the language used in the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial. *Badeaux v. Southwest Computer Bureau, Inc.*, 05-0612 (La. 3/17/06), 929 So. 2d 1211; *Young*, *supra*; *Sharp v. Melton*, 53,508 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1135; *Stonecipher v. Caddo Par.*, 51,148 (La. App. 2 Cir. 4/7/17), 219 So. 3d 1187, *writ denied*, 17-0972 (La. 10/9/17), 227 So. 3d 830.

In her petition and the amendments thereto, plaintiff alleged she sustained injuries as a result of the actions/omissions of Heritage and its management company, Pathway. Plaintiff made numerous specific allegations against Pathway, some of which sounded in medical malpractice, and some of which sounded in ordinary negligence. Further, plaintiff alleged she was a resident at Heritage, and Pathway, through its contract with Heritage, was responsible for financial decisions which adversely affected her care. Whether plaintiff will be able to meet her burden of proving her allegations is not before this Court at this time. We find plaintiff's petitions allege facts sufficient to state a cause of action against Pathway. Consequently, we deny the exception of no cause of action.

## CONCLUSION

For the reasons set forth herein, the judgment of the district court granting partial summary judgment in favor of defendants is hereby affirmed, and the peremptory exception of no cause of action filed by defendant, Pathway Management of Louisiana, LLC, is hereby denied. Costs of this appeal are assessed to plaintiff, Joan Marie Douglas.

**AFFIRMED; PEREMPTORY EXCEPTION OF NO CAUSE OF ACTION DENIED.**